# 22-2505

## United States Court of Appeals
### *for the*
### Second Circuit

Nicholas Earl,

*Plaintiff-Appellant*,

Nurse Anonymous,

*Plaintiff*,

v.

Good Samaritan Hospital of Suffern NY, Bon Secours Charity Health System, Westchester Health Care Foundation, Inc., DBA Westcheschester Health Care Network, Inc.,

*Defendants-Appellees*,

Westchester Medical Health Foundation, Inc., Westchester County Health Care Corporation, DBA WMCHealth,

*Defendants*.

On Appeal from a Judgment of the United States District Court, Southern District of New York

## Brief of Plaintiff-Appellant

Stephen Bergstein

Bergstein & Ullrich
5 Paradies Lane
New Paltz, New York 12561
(845) 469-1277
Counsel for Plaintiff-Appellant

## Table of Contents

Table of Authorities ..................................................................................... iii

Jurisdiction ................................................................................................. 1

Statement of the Case.................................................................................. 1

Statement of Facts ...................................................................................... 1

Procedural History ...................................................................................... 5

Questions Presented .................................................................................... 6

Summary of Argument................................................................................. 6

Argument

The district court improperly dismissed the Second Amended Complaint
for failure to state a claim ........................................................................... 7

Point I:    Plaintiff alleged that he timely filed an EEOC charge and received
            a right-to-sue letter...................................................................... 9

Point II:   In the alternative Defendants waived any argument that the
            Plaintiff did not timely file an EEOC charge to receive a
            right-to-sue letter ...................................................................... 10

Point III:  The SAC plausibly asserts that Plaintiff was disabled under federal
            law................................................................................................ 13

    A. Plaintiff was disabled when he contracted COVID-19 while employed
       by the Hospital .................................................................................. 16

    B. The SAC plausibly asserts that Plaintiff was substantially limited
       in one or more major life activities.................................................. 19

    C. The SAC plausibly asserts that Plaintiff's chronic kidney disease
       is a protected disability under federal law ....................................... 23

Conclusion........................................................................................26

Certification.....................................................................................27

# Table of Authorities

**Cases**

*Anderson News, L.L.C. v. Am. Media, Inc.*,
    680 F.3d 162 (2d Cir. 2012) .......................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .................................................................................8

*Clark v. Stop & Shop Supermarket Co.*,
    15-CV-0304, 2016 WL 4408983 (D. Conn. Aug. 16, 2016) .......................14

*Colwell v. Suffolk County Police Dept.*,
    158 F.3d 635 (2d Cir. 1998) .......................................................................21

*Dipinto v. Westchester Co.*,
    18-CV-793 (KMK), 2019 WL 4142493, (S.D.N.Y. Aug. 30, 2019) ...........15

*Drimal v. Tai*,
    786 F.3d 219 (2d Cir. 2015) .......................................................................8

*Fiscus v. Wal-Mart Stores, Inc.*,
    385 F.3d 378 (3d Cir. 2004) .......................................................................24

*Fort Bend Cnty. v. Davis*,
    139 S. Ct. 1843 (2019) .............................................................................12

*Francis v. City of New York*,
    235 F.3d 763 (2d Cir. 2000) .......................................................................10

*Gilbert v. Frank*,
    949 F.2d 637 (2d Cir. 1991) .................................................................24, 25

*Hamilton v. Westchester Cnty.*,
    3 F.4th 86 (2d Cir. 2021) ...............................................................15, 19, 20

*Hardaway v. Hartford Pub. Works Dep't,*
    879 F.3d 486 (2d Cir. 2018) ........................................................10

*Heiko v. Colombo Sav. Bank, F.S.B.,*
    434 F.3d 249 (4th Cir. 2006) ......................................................25

*Holtz v. Rockefeller & Co.,*
    258 F.3d 62 (2d Cir. 2001) ..........................................................9

*Kelly v. New York State Office of Mental Health,*
    200 F. Supp. 3d 378 (S.D.N.Y. 2016) ...................................21, 22

*L-7 Designs, Inc. v. Old Navy, LLC,*
    647 F.3d 419 (2d Cir. 2011) .........................................................8

*Lawson v. CSX Transp., Inc.,*
    245 F.3d 916 (7th Cir. 2001) ......................................................20

*Legnani v. Alitalia Linee Aeree Italiane, S.P.A.,*
    274 F.3d 683 (2d Cir. 2001) .........................................................9

*Limauro v. Consolidated Edison Co. of N.Y.,*
    20-cv-03558, 2021 WL 466952 (S.D.N.Y. Feb. 9, 2021) ...........................21

*Lynch v. City of New York,*
    952 F.3d 67 (2d Cir. 2020) ..........................................................8

*Mazzocchi v. Windsor Owners Corp.,*
    11 Civ. 7913 (AT), 2013 WL 5295089 (S.D.N.Y. Sept. 17, 2013) .............22

*McInerney v. Rensselaer Polytechnic Inst.,*
    505 F.3d 135 (2d Cir. 2007) .........................................................9

*Parada v. Banco Indus. De Venez.,*
    753 F.3d 62 (2d Cir. 2014) ........................................................14

*Parada v. Banco Indus. de Venezuela, C.A.,*
    753 F.3d 62 (2d Cir. 2014) ........................................................23

*Price v. Mount Sinai Hosp.*,
    458 Fed. Appx. 49 (2d Cir. 2012) ...............................................................19

*Ruston v. Town Board for the Town of Skaneateles*,
    610 F.3d 55 (2d Cir. 2010) ..........................................................................7

*Shine v. New York City Hous. Auth.*,
    19-CV-04347 (RA), 2020 WL 5604048 (S.D.N.Y. Sept. 18, 2020) ......22, 23

*Tiberio v. Allergy Asthma Immunology of Rochester*,
    664 F.3d 35 (2d Cir. 2011) ..........................................................................9

*Verne v. New York City Dep't of Educ.*,
    21 CIV. 5427 (JPC), 2022 WL 4626533 (S.D.N.Y. Sept. 30, 2022)............12

*Zarda v. Altitude Express, Inc.*,
    883 F.3d 100 (2d Cir. 2018) ......................................................................10

**Statutes**

29 U.S.C. § 794(a) ...........................................................................................13

42 U.S.C. § 2000e-5(e) .....................................................................................9

42 U.S.C. § 12102(1) ......................................................................................14

42 U.S.C. § 12102(2)(A) ..................................................................................21

42 U.S.C. § 12102(2)(B) ..................................................................................16

42 U.S.C. § 12102(4)(E) ..................................................................................14

42 U.S.C. § 12111(8) ......................................................................................13

42 U.S.C. § 12112(a) .......................................................................................13

42 U.S.C. § 12112(b)(5)(A) .............................................................................13

42 U.S.C. § 12117(a) .......................................................................................9

42 U.S.C. § 12117(b) ................................................................................9

45 C.F.R. § 84.3(j)(i) ...............................................................................14

28 C.F.R. § 35.108(c)(1)(i) .....................................................................23

28 C.F.R. § 35.108(d)(1)(i)(vi) ...............................................................15

29 C.F.R. § 1630.2(j)(1)(i) ......................................................................16

29 C.F.R. § 1630.2(j)(1)(i)(iii) ...............................................................15

29 C.F.R. § 1630.2(j)(1)(ii) .........................................................14, 19, 20

29 C.F.R. § 1630.2(j)(1)(v) .....................................................................14

29 C.F.R. § 1630.2(j)(1)(vi) ....................................................................14

29 C.F.R. § 1630.2(j)(4)(ii) .....................................................................14

## Jurisdiction

As Plaintiff-Appellant filed this action under the Americans with Disabilities Act and the Rehabilitation Act, the district court had subject matter jurisdiction. On September 7, 2022, the district court dismissed all federal claims, dismissing the Second Amended Complaint. (JA 125). Plaintiff filed a notice of appeal on September 30, 2022. (JA 124). This Court therefore has appellate jurisdiction under 28 U.S.C. § 1291.

## Statement of the Case

Pursuant to the Americans with Disabilities Act and the Rehabilitation Act, Plaintiff asserts that Defendant Good Samaritan Hospital denied him a reasonable accommodation and constructively discharged his employment because of his disabilities, COVID-19-related physical conditions and his chronic kidney disease. The district court (Hon. Nelson S. Roman) dismissed the Second Amended Complaint, holding *inter alia* that (1) Plaintiff did not exhaust administrative remedies under the ADA and (2) Plaintiff was not disabled under federal law. The district court's ruling is reported at 2022 WL 4087597 (S.D.N.Y. Sept. 6, 2022).

## Statement of Facts

In October 2018, Plaintiff began working as a nurse in the surgical intensive care unit at Good Samaritan Hospital. (JA 73-74 ¶¶ 27-28). In October 2019, Plaintiff took a "fit test" to obtain a face mask with a proper seal. (JA 74-75 ¶ 32).

1

Under this test, the employee wears various masks to ensure that "nothing airborne seeps through into the mouth and lungs; otherwise, there is no proof of a proper seal to avoid the spread of viruses, bacteria, or other pathogens through any cracks or gaps in the mask." (*Id.*) The fit test proved that Plaintiff needed a powered air purifying respirator (PAPR). (JA 75 ¶ 33). Despite his efforts, Plaintiff was denied a PAPR, which usually costs about $300 and requires a $125 cartridge. (*Id.* at ¶¶ 34-36).

At the start of the COVID-19 pandemic in March 2020, after the CDC and OSHA issued guidelines for social distancing and personal protective equipment (PPE) (JA 76-77 ¶¶ 39-40), Plaintiff was assigned to care for a special-needs patient who had pneumonia and was exhibiting COVID symptoms. (JA 77 ¶¶ 41-42). A doctor told Plaintiff that, since pneumonia had to be on both sides of the lungs to justify a COVID test, the patient did not need such a test or be treated as COVID-positive. (JA 77-78 ¶¶ 43, 45). This determination was significant because all N95 masks were being kept by the supervisors or used by suspected COVID patients. (JA 80 ¶ 57).

Under Plaintiff's care, the patient showed "classic symptoms of COVID," including a 103-degree fever, low oxygen saturation, profuse sweating, and brain stat. (JA 77-78 ¶¶ 41, 46-47). Another nurse also believed the patient had COVID. (JA 80 ¶ 56). When Plaintiff told the day nurse and his night supervisor that the

2

patient was unprotected and that Plaintiff could not obtain a satisfactory mask for himself (JA 79 ¶ 49), a nurse responded, "I've lived through three of these end-of-the-world pandemics, and we'll be ok." (*Id.* at ¶ 50). Plaintiff texted his direct manager, Megan Hanys, stating that he lives with senior parents with risk factors for COVID – hypertension, diabetes and obesity – and that he has chronic kidney disease. (*Id.* at ¶¶ 51-52). Plaintiff added that reports from China indicated that COVID can shut down the kidneys. (*Id.* at ¶¶ 52).

After Hanys told Plaintiff to calm down, he told the charge nurse that he and the patient needed better care. (*Id.* ¶¶ 53-54). Plaintiff next told the evening supervisor, Marie Van DeVere, that he was uncomfortable caring for the patient with his "air passages fully exposed." (JA 80 ¶ 57). Searching the Hospital for supplies to protect himself, Plaintiff found a surgical mask, which was inadequate because his duties included suctioning "virus-laden gunk out of the disabled patient's windpipe." (*Id.* at ¶ 55).

When Plaintiff returned to work a few days later, he learned that the patient had died from COVID. (JA 68, 80 ¶¶ 8, 55). Plaintiff then tested positive for COVID. (JA 80 ¶¶ 59-60). Plaintiff's doctor told him that, given his kidney disease and the COVID infection, "he should not be in contact with immuno-compromised people." (JA 81 ¶ 63). Plaintiff's occupational health nurse at the Hospital said he could not care for critical patients without a proper mask. (JA 84 ¶ 88).

3

Due to CDC guidelines, Plaintiff missed work for about three weeks. (JA 80-81 ¶¶ 61-65). While he was out with COVID, Plaintiff asked his manager about obtaining a PAPR; the manager said, "just get fit tested again." (JA 82 ¶ 78). Plaintiff said he could not do so because the test measures taste and smell, which he had lost due to COVID. (*Id.*)

Upon returning to work, since he could still taste the solution, Plaintiff failed the fit test with both available masks. (JA 81 ¶ 66). He worked for two nights with an N95 respirator. (*Id.* at ¶ 67). On the first night, the mask slipped off his face. (*Id.*) The next day, Plaintiff returned to the fit-testing station, which had no new masks. (*Id.* at ¶ 68). When Plaintiff raised the issue with his supervisor, Nurse Adrianne asked, "didn't you get fit tested yesterday?" (*Id.* at ¶ 69). When Plaintiff said the mask was too small (*id.* at ¶¶ 69-70), Adrianne responded, "You passed yesterday. What games are you playing?" (JA 82 ¶ 71). Plaintiff said he simply wanted "a mask that fits." (*Id.* at ¶¶ 74-75). While an occupational health nurse said Plaintiff "needs a PAPR," Adrienne said, "We don't have any. We need to find something else that will work." (*Id.* ¶¶ 77-78). The occupational health nurse next asked Adrienne, "Can't he go to a clean unit?" (referring to a newly-opened unit for non-COVID patients), prompting Adrienne to respond, "He's a critical care nurse." (JA 83 ¶¶ 80-82). Based on his education and training, Plaintiff was qualified for less-risky jobs, such as the "clean unit." (*Id.* at ¶ 83). As such, while

4

the Hospital did not initiate the interactive process, Plaintiff "easily could have been accommodated" and given a less dangerous assignment. (JA 83 ¶¶ 82-83).

Unwilling "to get reinfected," Plaintiff ultimately resigned his position, stating he could work a non-COVID unit or the critical care unit with a PAPR, which the Hospital would not provide. (JA 84, 86-87 ¶¶ 84-86, 98, 102). While Chief Nursing Officer Phyllis M. Yezzo asked Plaintiff to return to work, she said the Hospital could not provide a PAPR because it lacked the $125 cartridges. (JA 86 ¶ 99). Plaintiff said he would not return without a PAPR or placement in a clean unit. (JA 87 ¶ 102). Yezzo did not offer to accommodate Plaintiff and acquire the materials he needed to avoid further exposure. (JA 88 ¶ 119).

## Procedural History

Plaintiff filed this action on April 18, 2020, claiming Defendants denied him a reasonable accommodation and constructively discharged him because of his disabilities in violation of the ADA and the Rehabilitation Act. (JA 1). He filed the First Amended Complaint (FAC) on September 21, 2020. (JA 27). Defendants filed a motion to dismiss the FAC. (ECF 27). On September 28, 2021, the district court granted the motion and dismissed the federal claims, holding *inter alia* that Plaintiff failed to allege that he had any disabilities under federal law when he worked for the Hospital. (JA 50).

5

Plaintiff next filed a Second Amended Complaint (SAC), highlighting the nature of his physical disabilities. (JA 63). Defendants moved to dismiss the SAC (JA 97-98), which the district court granted on September 6, 2022, dismissing all federal claims. The district court held *sua sponte* that the SAC does not allege that Plaintiff had complied with the EEOC filing prerequisites under the ADA. (JA 109-111). The district court also dismissed the Rehabilitation Act claim on the basis that Plaintiff did not plausibly allege that he suffered any federally-protected disabilities when he worked for the Hospital. (JA 112-121).

## Questions Presented

1. Did the district court properly dismiss Plaintiff's ADA claim on the basis that he failed to exhaust his administrative remedies with the EEOC?

2. Did the district court properly hold that Plaintiff did not plausibly plead that he suffered from any federally-protected disabilities when he worked for the Hospital?

## Summary of Argument

1. While the district court held *sua sponte*, and without any briefing from the parties, that Plaintiff failed to exhaust administrative remedies, the SAC asserts that he filed a charge of discrimination with the EEOC and received a right-to-sue letter. In any event, since the exhaustion of administrative remedies is not a

6

jurisdictional requirement, the Hospital waived this argument because it did not raise this issue on the motions to dismiss.

2. On the merits, the SAC asserts a disability discrimination claim under federal law. While the district court held the Complaint does not allege that Plaintiff was disabled while he worked for the Hospital, the Complaint claims that, immediately following his COVID infection, Plaintiff suffered a series of health-related ailments that substantially affected major life activities. Since Plaintiff continued to work for the Hospital following his COVID infection, the SAC plausibly asserts that he was disabled under federal law during his employment.

## Argument

### The Second Amended Complaint state a claim for disability discrimination

"'[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.' . . . 'When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Ruston v. Town Board for the Town of Skaneateles*, 610 F.3d 55, 58-59 (2d Cir. 2010).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While the plausibility test "asks for more than a sheer possibility that a defendant has acted unlawfully" (*id.*), it "does not impose a probability requirement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

The district court should not resolve competing factual inferences on a motion to dismiss. *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) ("The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion. '[F]act-specific question[s] cannot be resolved on the pleadings.' A court ruling on such a motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible"); *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"). "Plausibility thus depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

On this appeal from a Rule 12(b)(6) dismissal, the standard of review is *de novo*. *Drimal v. Tai*, 786 F.3d 219, 223 (2d Cir. 2015).

8

## Point I

### Plaintiff alleged that he timely filed an EEOC charge and received a right-to-sue letter

"A plaintiff may bring an employment discrimination action under Title VII . . . only after filing a timely charge with the EEOC or with 'a State or local agency with authority to grant or seek relief from such practice.'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82–83 (2d Cir. 2001) (quoting 42 U.S.C. § 2000e-5(e)). "[A] claim under [Title VII] must be filed in federal district court within 90 days of the claimant's receipt of a right-to-sue letter from the EEOC." *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011). "Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII . . . statutory scheme[] and, as such, a precondition to bringing claims in federal court." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001). The ADA incorporates these procedural requirements. 42 U.S.C. § 12117(a)(b); *McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 138 (2d Cir. 2007).

In the FAC filed on September 21, 2020, Plaintiff alleged that he "filed a charge of discrimination within 300 days of his termination and got a right to sue within the previous week." (JA 44 ¶ 104; *see also* JA 32 ¶ 19 [FAC] and JA 90 ¶ 102 [SAC]). As the district court overlooked this allegation in holding that Plaintiff failed to exhaust administrative remedies (JA 109-111), this Court should reverse.

## Point II

### Defendants waived any argument that Plaintiff did not timely file an EEOC charge or receive a right-to-sue letter

While "the failure to exhaust administrative remedies is a precondition to bringing a Title VII claim in federal court, [it is not] a jurisdictional requirement." *Hardaway v. Hartford Pub. Works Dept.*, 879 F.3d 486, 489 (2d Cir. 2018); *see also Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 110 n.4 (2d Cir. 2018) ("failure to present a Title VII claim to the EEOC before filing suit in federal court 'is not a jurisdictional prerequisite, but only a precondition to bringing a Title VII action that can be waived by the parties or the court'"). Because "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court," it is "subject to waiver, estoppel, and equitable tolling." *Francis v. City of New York*, 235 F.3d 763, 767 (2d Cir. 2000); *see also id.* at 766 ("the failure to exhaust administrative remedies is a precondition to bringing a Title VII claim in federal court, rather than a jurisdictional requirement,' and therefore, an affirmative defense based on 'the sufficiency of [a] plaintiff's administrative exhaustion' is 'waivable'"). As such, "the burden of pleading and proving Title VII exhaustion lies with [the] defendant[]." *Hardaway*, 879 F.3d at 491.

In the FAC, filed on September 21, 2021, Plaintiff asserted that, in connection with his ADA claim, he filed an EEOC charge and later received his right-to-sue letter that week. (JA 32 ¶ 19; JA 44 ¶ 104). On the motion to dismiss,

10

Defendants did not argue that Plaintiff failed to file an EEOC charge, or that he had not received a right-to-sue letter. Instead, they noted that "Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ('EEOC') for his federal claims, and received a right to sue letter." (ECF 28 [Def. Mem.] at 5). In a footnote, Defendants stated they "have not seen this charge, and therefore are unable to assess if all claims brought herein were first properly addressed through his administrative remedies." *Id.* at n. 6. Defendants' brief focused on the merits, arguing the FAC failed to state a claim. (ECF 28). In resolving the first motion to dismiss, the district court solely addressed the merits of the FAC and did not determine whether Plaintiff properly alleged that he had filed an EEOC charge or received a right-to-sue letter. (JA 50-62).

When Plaintiff filed the SAC, a typographical error omitted a portion of his allegation that he had received the right-to-sue letter. (JA 73 ¶ 24). However, as demonstrated in Point I, later in the SAC, Plaintiff alleged that he "filed a charge of discrimination within 300 days of his termination and got a right to sue within the previous week." (JA 90 ¶ 102). On the motion to dismiss the SAC, Defendants again did not argue that Plaintiff had failed to file an EEOC charge, or that he had not received a right-to-sue letter. Instead, as they did in their prior motion, Defendants stated, "Plaintiff filed a charge of discrimination with the [EEOC]

11

for his federal claims, and received a right to sue letter." (Dkt. 45 [Def. Mem.], at 5) (citing SAC ¶ 102). Defendants revived their footnote stating that they "have not seen this charge, and therefore are unable to assess if all claims brought herein were first properly addressed through his administrative remedies." *Id.* at n. 5.

As Defendants never sought dismissal on the basis that Plaintiff had not filed an EEOC charge or received a right-to-sue letter, they waived that argument. *See Verne v. New York City Dep't of Educ.*, No. 21 CIV. 5427 (JPC), 2022 WL 4626533, at *8 n. 4 (S.D.N.Y. Sept. 30, 2022) ("The Court notes that Verne may not have exhausted her administrative remedies through the EEOC for her constructive discharge claim, as her retirement occurred subsequent to her filing of EEOC charges. However, because Defendants do not raise this argument, the Court considers it waived") (citing *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1849, 1852 (2019) (EEOC charge filing requirement is not jurisdictional and thus is waivable)). While the district court *sua sponte* dismissed the ADA claim on that basis (JA 109-111), since Defendants did not raise that issue on their motions to dismiss, Plaintiff did not have the opportunity to address this purported deficiency. This Court should reinstate the ADA claim and allow Plaintiff on remand to demonstrate that he complied with the EEOC filing prerequisites.

12

## Point III

### The SAC plausibly asserts that Plaintiff was disabled under federal law

The ADA prohibits discrimination against an employee "because of the disability of such individual in regard to [the] . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Discrimination" is defined to include

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless . . . [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the . . . [employer's] business.

42 U.S.C. § 12112(b)(5)(A).

"[O]therwise qualified" means the individual, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Similarly, under the Rehabilitation Act, "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

A plaintiff is disabled under federal law if he (1) has a physical or mental impairment that "substantially limits" one or more "major life activities"; (2) has a "record of such an impairment"; or (3) is "regarded as" having such an

13

impairment. 42 U.S.C. § 12102(1). Regulations under the Rehabilitation Act carry the same definition. *See* JA 114 (citing 45 C.F.R. § 84.3(j)(i)).

> An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section.

29 C.F.R. § 1630.2(j)(1)(ii); *see Parada v. Banco Indus. De Venez.*, 753 F.3d 62, 69 (2d Cir. 2014). This inquiry "usually will not require scientific, medical, or statistical analysis," 29 C.F.R. § 1630.2(j)(1)(v); *Clark v. Stop & Shop Supermarket Co.*, 15-CV-0304 (JCH), 2016 WL 4408983, at *4 (D. Conn. Aug. 16, 2016), and is made "without regard to the ameliorative effects of mitigating measures." 42 U.S.C. § 12102(4)(E); 29 C.F.R. § 1630.2(j)(1)(vi). In determining whether an individual is disabled under the ADA, the Second Circuit rejects "bright-line tests" in favor of a "fact-specific inquiry." *Parada*, 753 F.3d at 69. Appropriate considerations include "the difficulty, effort, or time required to perform a major life activity; pain experienced when performing a major life activity; the length of time a major life activity can be performed; and/or the way an impairment affects the operation of a major bodily function." 29 C.F.R. § 1630.2(j)(4)(ii).

14

The ADA Amendments Act ("ADAAA) of 2008 "broadened the definition of 'disability' under the ADA" and primarily sought "to overrule the Supreme Court's arguably narrow interpretation of what constitutes an ADA-qualifying disability . . . and to make clear that the substantial-limitation requirement in the definition of 'disability' is not an exacting one." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 92 (2d Cir. 2021). As such, "'[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA,' and 'is not meant to be a demanding standard.' Relatedly, the term 'substantially limits' is to be interpreted and applied to require a lower degree of functional limitation than the standard required prior to the ADAAA." (*Id.*) (citing 28 C.F.R. § 35.108(d)(1)(i)(vi)); *see also Dipinto v. Westchester Co.,* 18-CV-793 (KMK), 2019 WL 4142493, at *7 (S.D.N.Y. Aug. 30, 2019) ("'[t]he primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity.' Therefore, 'the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis'") (citing 29 C.F.R. § 1630.2(j)(1)(i)(iii)).

"Major life activities" under the ADA includes "the operation of a major bodily function, including but not limited to, functions of the immune system,

normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(2)(B); *see also* 29 C.F.R. § 1630.2(j)(1)(i) ("[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active").

### A. Plaintiff was disabled when he contracted COVID-19 while employed by the Hospital.

The district court held that the SAC fails to allege that, while employed at the Hospital, Plaintiff suffered any impairments that substantially affected one or more major life activities. This analysis overlooked the more lenient test under the ADAAA and failed to review the SAC in the light most favorable to Plaintiff.

"[D]epending on the specific facts involved in an individual employee's condition, a person with COVID-19 has an actual disability if the person's medical condition or any of its symptoms is a 'physical or mental' impairment that 'substantially limits one or more major life activities.'" EEOC, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws. The EEOC recommends "[a]n individualized assessment" and "a case-by-case determination" of "whether the effects of a person's COVID-19 substantially limit a major life activity."[1]

---

[1] https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws.

16

Plaintiff asserts that he "has not been able to get a peaceful night's rest, since he got COVID[,]" and "has difficulty falling asleep and staying asleep. Not only does he wake up feeling short of breath (often almost choking), but he experiences nightmares that leave his heart racing." (JA 65 ¶ 2(b)). The inference is that Plaintiff began suffering these symptoms while he was still working for the Hospital, as the symptoms began once he was exposed to COVID. Similarly, "After catching COVID-19, [Plaintiff's] digestive tract has troubled him to no end," suffering "such intensive heartburn that it feels as though he is having symptoms that mimic a heart attack." (JA 66 ¶ 3). Also, following his battle with COVID, "Plaintiff has felt significant shortness of breath and chest tightness," as his lungs feel restricted when he takes a deep breath, he is no longer able to exercise "as he once was before COVID," he cannot perform any cardiorespiratory exercise and can barely run half a mile "before running out of breath," and his breathing difficulties have adversely affected his posture. (JA 66-67 ¶ 4(a)(b)). He further alleges that, post-COVID, "[h]e had wrenching flu for more than two weeks and still has Amsonia – a loss of his ability to smell and taste." (JA 69 ¶ 10). This language further permits the inference that Plaintiff lost these sensory abilities while he was still working for the Hospital. *See also* JA 82 ¶ 78 (alleging that, upon returning to the Hospital following his COVID quarantine, "[P]laintiff had very little smell or taste[]").

17

In dismissing the SAC, the district court held that "the language that Plaintiff uses in his relevant allegations strongly suggest that his alleged impairments are long-term effects resulting from his COVID infection." (JA 115). But while the SAC asserts that Plaintiff suffers from long-term COVID, the example cited by the district court demonstrates that he began suffering "significant shortness of breath and chest tightness *after his battle with COVID-19*" (*Id.*) (citing JA 66 ¶ 4(a)) (emphasis supplied). Since Plaintiff continued working for the Hospital following his COVID quarantine, this allegation plausibly asserts that he suffered shortness of breath and chest tightness during his employment.

The district court stated that some of Plaintiff's allegations "expressly indicate that Plaintiff did not have these alleged impairments during his employment at the Hospital," such as the allegation that Plaintiff "tasted the solution" when he was fit-tested. (JA 115) (citing JA 81 ¶ 66). But Plaintiff asserted that "[a]t the time [he] had very little smell or taste[.]" (JA 82 ¶ 78). Anticipating this issue, the SAC states, "There is no contradiction here. At the time, Plaintiff was unaware that he had lost smell to the extent that he had." (*Id.* at n. 3). Plaintiff was not required to assert that he no sense of taste or smell at the time; under federal law, he only had to assert that he suffered a substantial impairment of these senses.

18

The district court further held that the SAC fails to assert that Plaintiff was unable "to get a peaceful night's rest" while employed at the Hospital because he "fails to describe in some 'detail the frequency, duration, or severity' of his alleged sleeping problems, and how they affected him *at the time of his employment at the Hospital*." (JA 115) (emphasis in original). But in asserting that he was unable to sleep properly, the plausible inference is that he could not do so at all, including during his employment at the Hospital, or at least on a regular basis such that he was substantially limited "as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).

### B. The SAC plausibly asserts that Plaintiff was substantially limited in one or more major life activities.

The district court recognized that "a short-term [limitation] can qualify as an actionable disability under the ADA." (JA 116) (quoting *Hamilton*, 3 F.4th at 93). While the district court further recognized that "eating is a major life activity" (*id.*) (citing *Price v. Mount Sinai Hosp.*, 458 Fed. Appx. 49, 51 (2d Cir. 2012)), it held the SAC does not plausibly assert "how his alleged limitation on his taste and smell caused by COVID-19 'significantly limits' his ability to eat – such as his ability to eat and digest food." (*Id.*) This reasoning is reversible error.

The SAC asserts that "the loss of sense of smell and taste" makes it impossible to enjoy foods and drinks, which now "taste like poison," diminishing his appetite and causing significant weight loss. (JA 64 ¶ 1(c)). The inability to

19

smell or taste has caused Plaintiff to ingest rancid meat, milk, and other foods, resulting in "severe gastrointestinal problems and illness." *Id.* at ¶ (1)(b). This limitation substantially limits "a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).

While the district court held that Plaintiff has not alleged that his inability to taste or smell affects "his ability to eat and digest food" (JA 116), the SAC asserts otherwise, emphasizing that he cannot ingest foods or determine whether the food is rancid. "Clearly, the ability to eat is integral to one's daily existence." *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 923 (7th Cir. 2001). If Plaintiff has no sense of taste and has difficulty ingesting food, then he is substantially limited in that major life activity because he cannot properly nourish himself. To the extent the district court held that Plaintiff failed to allege his inability to eat has not affected his ability to digest food, this Court has not endorsed such a narrow test, which overlooks the mandate that "'[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA,' and 'is not meant to be a demanding standard,'" and "the term 'substantially limits' is to be interpreted and applied to require a lower degree of functional limitation than the standard required prior to the ADAAA." *Hamilton*, 3 F.4th at 91. In any event, Plaintiff's COVID-related loss of taste and smell caused crippling heartburn, which the district court noted is a digestion issue. (JA 117).

20

Plaintiff further asserts that his COVID-related illness has made it difficult for him to sleep, as he "wakes up feeling short of breath (often almost choking)" and suffers "nightmares that leave his heart racing." (JA 65 ¶ 2(b)). Plaintiff also alleges the loss of mental clarity, also caused by COVID. *Id.* at ¶ 2(a) ("He finds it arduous to concentrate; his memory loss (long and short term) makes him feel like his brain is turning to mush"). The ability to concentrate is a major life activity under the ADA. *See Limauro v. Consolidated Edison Co. of N.Y.*, 20-cv-03558 (CM), 2021 WL 466952, at *8 (S.D.N.Y. Feb. 9, 2021) ("[Plaintiff]'s PTSD and major depressive disorder substantially limits his ability to sleep, regulate his emotions, be happy, and to socialize"); 42 U.S.C. § 12102(2)(A) ("Major life activities" can include "sleeping, . . . speaking, . . . learning, . . . concentrating, thinking, [and] communicating"). "Compared to most people in the general population," 29 C.F.R. § 1630.2(j)(1)(ii), these ailments plausibly assert that Plaintiff is disabled under federal law.

While courts recognize that "[d]ifficulty sleeping . . . is 'extremely widespread,'" *Kelly v. New York State Office of Mental Health*, 200 F. Supp. 3d 378, 393 (S.D.N.Y. 2016) (quoting *Colwell v. Suffolk County Police Dept.*, 158 F.3d 635, 644 (2d Cir. 1998)), unlike the plaintiff in *Kelly*, Plaintiff is not merely claiming sleep difficulties. 200 F. Supp. 3d at 393. Nor does he assert conclusory allegations about sleep deprivation. (*Id.*) The general population does not wake up

21

short of breath or unable concentrate or retain memory for extended periods of time. *Compare Mazzocchi v. Windsor Owners Corp.*, 11 Civ. 7913 (AT), 2013 WL 5295089, at *7-8 (S.D.N.Y. Sept. 17, 2013) (finding it plausible at the pleading stage that plaintiff had an ADA-covered disability in alleging she had bipolar disorder that impaired her abilities "to sleep, concentrate, learn, work, and interact with others" and citing post-ADAAA regulations calling for expansive ADA coverage). Moreover, while the district court held that Plaintiff failed to "describe in some 'detail the frequency, duration, or severity'" of his impairments.'" (JA 117) (citing *inter alia Kelly*, 200 F. Supp. 3d at 393), the SAC asserts that he "often" wakes up short of breath, plausibly claiming this happens on a regular basis or more frequently than the general population. These sleepless nights are also more severe than the general population. Plaintiff also asserts an inability to concentrate that extends beyond the general population. Twenty-five- year-old men (JA 65 ¶ 2(b)) do not normally suffer these ailments.

Plaintiff also asserts that his battle with COVID left him with "significant shortness of breath and chest tightness." (JA 66 ¶ 4(a)). "Breathing is one of the enumerated major life activities covered under the ADA regulations. . . . [C]ourts in this Circuit have established that plaintiffs must plead more than vague or conclusory allegations regarding 'difficulty' or 'trouble' conducting a major life activity." *Shine v. New York City Hous. Auth.*, 19-CV-04347 (RA), 2020 WL

22

5604048, at *7 (S.D.N.Y. Sept. 18, 2020) (citing *inter alia Parada v. Banco Indus. de Venezuela, C.A.*, 753 F.3d 62, 69 (2d Cir. 2014) and 28 C.F.R. § 35.108(c)(1)(i)). The SAC is not conclusory in asserting Plaintiff's breathing difficulties. When Plaintiff takes a deep breath, "his lungs feel restricted after a shallow inspiration" and he can no longer exercise as he had in the past. In the past, Plaintiff was able to run five miles; he now runs out of breath after a half-mile. (JA 66 ¶ 4(a)). These are significant physical limitations for a 25 year-old.

Finally, Plaintiff asserted that he resigned because he was unwilling "to get reinfected" and could either work in a non-COVID unit or work in the critical care unit with a PAPR. (JA 84, 86-87 ¶¶ 84-86, 98, 102). Plaintiff noted in his resignation letter that the Hospital would not provide a PAPR. (JA 87 ¶ 102). That assertion implies that Plaintiff was a COVID victim at the time of his resignation and had already been suffering the symptoms from that infection.

## C. The SAC plausibly asserts that Plaintiff's chronic kidney disease is a protected disability under federal law.

In holding that the SAC does not allege that Plaintiff's kidney condition is a protected disability under federal law, the district court held that "he fails to plausibly allege how such disease constituted a disability or handicap during his employment at the *hospital*." (JA 120) (emphasis in original). The court added, "insofar as Plaintiff alleges that his chronic kidney disease, together with his particular vulnerability to contract COVID-19 again with potentially severe

23

consequences, Plaintiff's allegations still fail because 'it is the nature of the ordinary limitations – not the severity of the consequences if a plaintiff fails to follow necessary treatment – that determines whether a limitation on a major life activity is substantial.'" (*Id.*)

This reasoning is reversible error. The elimination of waste from the blood is a major life activity. In *Fiscus v. Wal-Mart Stores, Inc.*, 385 F.3d 378 (3d Cir. 2004), the court reasoned, "we disagree with the District Court's conclusion that impaired elimination of waste and blood cleansing are nothing more than characteristics of kidney failure. Rather, they are the *effect* of kidney failure in the same way that impaired thinking is the *effect* of organic brain disease." *Id.* at 384 (emphases in original). Moreover, "processing and eliminating waste from the blood qualifies as a major life activity because, in their absence, death results. In this respect, waste elimination is comparable to other life-sustaining activities such as breathing, eating, or drinking, all of which have been held to be major life activities within the statute." *Id.* (citing *inter alia Gilbert v. Frank*, 949 F.2d 637, 641 (2d Cir. 1991) (assuming that kidney failure that limits removal of waste without dialysis substantially limits ability to care for one's self)). "We are inclined to view persons whose kidneys would cease to function without mechanical assistance, or whose kidneys do not function sufficiently to rid their bodies of waste matter without regular dialysis, as being substantially limited in their ability

24

to care for themselves." *Gilbert*, 949 F.2d at 641. "[E]very circuit court to address the issue has concluded that waste elimination is a major life activity." *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 255 (4th Cir. 2006) (rejecting the district court's reasoning "that waste elimination was not a major life activity because it was merely a characteristic of Heiko's kidney failure," as "[t]he *impairment* in this case is Heiko's kidney failure. The *effect* of this impairment is an inability to eliminate waste naturally") (emphases in original).

Plaintiff detailed the nature of his chronic kidney disease and its impact on his life, following his COVID diagnosis while working for the Hospital. The SAC alleges that "Plaintiff has been fighting chronic kidney disease since birth." (JA 67 ¶ 5). While his disease had not further progressed over the years, following his COVID diagnosis, two urine samples revealed protein, signaling further deterioration of his kidneys. (*Id.*) During his employment with the Hospital, Plaintiff told his supervisor about his kidney disease, reminding her that "reports from China show the virus can shut the kidneys down." (JA 69-70, 79 ¶¶ 11, 13, 52). This allegation disproves the district court's holding that Plaintiff failed to allege how this physical condition impacted him "during his employment at the Hospital." (JA 120). The SAC further alleges that Plaintiff's condition "substantially limits his ability to eat certain foods and, more importantly, filter nutrients from the bloodstream and eliminate waste." (JA 90 ¶ 104). These

25

allegations sufficiently state the nature and severity of Plaintiff's kidney disease. Moreover, he is not asserting that the condition will worsen he fails to obtain the necessary treatment. Rather, Plaintiff asserts that, following his COVID diagnosis, "he has had two urine samples come up with protein in them." (JA 67 ¶ 5).

## Conclusion

The district court improperly dismissed Plaintiff's SAC for failure to state a claim under Rule 12(b)(6). This Could should reinstate Plaintiff's Americans with Disabilities Act and Rehabilitation Act claim against Good Samaritan Hospital.

Dated: January 15, 2023

Respectfully submitted,

Stephen Bergstein

Bergstein & Ullrich
5 Paradies Lane
New Paltz, New York 12561
(845) 469-1277

Counsel for Plaintiff-Appellant Nicholas Earl

26

## Certification

Stephen Bergstein, counsel for Plaintiff-Appellant, affirms that this brief complies with FRAP 32(a)(7) in that it utilizes non-proportional typeface with no more than 10.5 characters per inch. The font is Times New Roman 14-point. The brief contains 6,214 words.

Stephen Bergstein

27