# 22-2505-cv

## United States Court of Appeals

*for the*

## Second Circuit

NICHOLAS EARL,

*Plaintiff-Appellant,*

NURSE ANONYMOUS,

*Plaintiff,*

– v. –

GOOD SAMARITAN HOSPITAL OF SUFFERN NY, BON SECOURS CHARITY HEALTH SYSTEM, WESTCHESTER HEALTH CARE FOUNDATION, INC., DBA WESTCHESCHESTER HEALTH CARE NETWORK, INC.,

*Defendants-Appellees,*

WESTCHESTER MEDICAL HEALTH FOUNDATION, INC., WESTCHESTER COUNTY HEALTH CARE CORPORATION, DBA WMCHEALTH,

*Defendants.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-APPELLEES

BRIAN J. CLARK
ALLISON B. GOTFRIED
VENABLE LLP
*Attorneys for Defendants-Appellees*
151 West 42nd Street
New York, New York 10036
(212) 307-5500

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1(a) of the Federal Rules of Appellate Procedure, Defendants-Appellees Good Samaritan Hospital of Suffern NY ("Good Samaritan"), Bon Secours Charity Health System ("BSCHS"), and Westchester Health Care Foundation, Inc., dba Westchester Health Care Network ("WHCF")[1] (collectively, "Appellees") hereby state that no publicly-held corporation owns ten percent (10%) or more of each of their stock. Appellees further state that BSCHS is the parent of Good Samaritan, and that BSCHS and WHCF each have no parent corporation.

---

[1] Appellant has used these names for the institutional Appellees throughout the instant action. However, and as noted in Appellees' papers below, there are no relevant entities named "Westchester Health Care Foundation, Inc." or "Westchester Health Care Network."

Instead, an entity named Westchester Medical Center Foundation, Inc. is the not-for-profit development and fundraising arm that supports Westchester Medical Center's healthcare mission. Another entity named Westchester County Health Care Corporation ("WCHCC") is a public benefit corporation established under the laws of the State of New York. N.Y. PUB. AUTH. L. § 3300, *et seq*. WCHCC does business as Westchester Medical Center, Westchester Medical Center Health Network, and WMCHealth ("WMC"). Since the inception of the action, Appellees have been unclear whether Appellant's reference to "Westchester Health Care Network" is intended to refer to WMC. (*See* Docket Entry No. 45, p. 1, n. 1.)

i

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................... iv

STATEMENT OF JURISDICTION............................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW .............................2

STATEMENT OF THE CASE ..................................................................2

STANDARD OF REVIEW ......................................................................6

STATEMENT OF ALLEGATIONS ...........................................................8

SUMMARY OF THE ARGUMENT ..........................................................11

ARGUMENT ......................................................................................13

    A.   Appellant Has Abandoned Any Claims of Retaliation Under the ADA and the Rehabilitation Act.....................................................13

    B.   Appellees Have Not Waived Any Defense Respecting Plaintiff's Administrative Exhaustion of His ADA Claims ..................................14

    C.   The Dismissal of Appellant's Discrimination Claims Must Be Affirmed.......................................................................................14

        i.    The District Court Properly Dismissed the Causes of Action Premised on Appellant's Purported Post-COVID Symptoms, Because He Failed to Plead that He Even Experienced Such Symptoms During His Employment ...........15

        ii.   Appellant Failed to Allege that Any of His Post-COVID Symptoms Substantially Impaired a Major Life Activity, Meriting Dismissal by the District Court ..................................18

        iii.  Dismissal of Appellant's Claims Premised on His COVID Infection are also Independently Warranted Because He Failed to Tether Such Purported Post-

COVID Symptoms to Any Required Reasonable
Accommodation or Adverse Action..............................................24

iv.   Appellant Also Failed to Allege that He Was Disabled in
Connection with his Purported Kidney Disease During
His Employment with Good Samaritan, Amply
Warranting Dismissal of His Related Discrimination
Claims...........................................................................................27

v.    Appellant Failed to Plausibly Set Forth a Reasonable
Accommodation in Connection with his Kidney Disease
that Good Samaritan Denied, Meriting Dismissal ....................31

CONCLUSION ......................................................................................34

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Armstrong v. McAlpin*,
  699 F.2d 79 (2d Cir. 1983) ...............................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................7, 22, 29

*Bailey v. Mount Vernon City Sch. Dist.*,
  No. 17-CV-9973 (KMK), 2020 U.S. Dist. LEXIS 57602 (S.D.N.Y.
  Mar. 30, 2020)....................................................................25, 33

*Baptista v. Hartford Bd. of Educ.*,
  427 F. App'x 39 (2d Cir. 2011) ...........................................................15

*Batac v. Pavarini Constr. Co.*,
  No. 03-cv-9783 (PAC), 2005 U.S. Dist. LEXIS 25765 (S.D.N.Y.
  Oct. 27, 2005) ...................................................................19, 22

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................7, 22, 29

*Butterfield v. N.Y. State*,
  No. 96 Civ. 5144 (BDP) (LMS), 1998 U.S. Dist. LEXIS 18676
  (S.D.N.Y. July 15, 1998) .................................................................23

*Cain v. Mandl Coll. of Allied Health*,
  No. 14 Civ. 1729 (ER), 2017 U.S. Dist. LEXIS 96917 (S.D.N.Y.
  June 22, 2017).....................................................................21

*Colautti v. Franklin*,
  439 U.S. 379 (1979).................................................................6, 15, 27

*Colwell v. Suffolk Cnty. Police Dep't*,
  158 F.3d 635 (2d Cir. 1998) ..............................................................21

*Dancause v. Mount Morris Central School District*,
  590 F. App'x 27 (2d Cir. 2014) ..........................................................29

*Dean v. Westchester Cnty. P.R.C.*,
    309 F. Supp. 2d 587 (S.D.N.Y. 2004) ..........................................................17, 30

*Fiscus v. Wal-Mart Stores, Inc.*,
    385 F.3d 378 (3d Cir. 2004) ...............................................................................30

*Giambattista v. Am. Airlines, Inc.*,
    584 F. App'x 23 (2d Cir. 2014) ....................................................................24, 27

*Gilbert v. Frank*,
    949 F.2d 637 (2d Cir. 1991) (cited ) ....................................................29, 33, 34

*Giles v. NBC Universal, Inc.*,
    No. 10 Civ. 7461 (DAB), 2011 U.S. Dist. LEXIS 106171
    (S.D.N.Y. Sept. 20, 2011) ....................................................................................28

*Graham v. Macy's Inc.*,
    No. 14 Civ. 3192 (PAE), 2015 U.S. LEXIS 35588 (S.D.N.Y. Mar.
    23, 2015) ..............................................................................................................28

*Grieve v. Tamerin*,
    269 F.3d 149 (2d Cir. 2001) ....................................................................6, 15, 27

*Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*,
    767 F. App'x 123 (2d Cir. 2019) ...................................................................32, 34

*Hedges v. Town of Madison*,
    456 F. App'x 22 (2d Cir. 2012) ...........................................................................15

*Heiko v. Colombo Sav. Bank, F.S.B.*,
    434 F.3d 249 (4th Cir. 2006) .........................................................................28, 29

*Hill v. DLJ Mortg. Capital, Inc.*,
    689 F. App'x 97 (2d Cir. 2017) .........................................................1, 5, 13, 26

*Idlisan v. N.Y.C. Health & Hosps. Corp.*,
    No. 12 Civ. 9163 (PAE), 2013 U.S. Dist. LEXIS 163151
    (S.D.N.Y. Nov. 15, 2013) ..............................................................................24, 27

*Jackan v. N.Y. State Dep't of Labor*,
    205 F.3d 562 (2d Cir. 2000) ...............................................................................32

*Jiggetts v. Local 32BJ, SEIU*,
No. 10 Civ. 9082 (DAB) (JCF), 2011 U.S. Dist. LEXIS 103100
(S.D.N.Y. Aug. 10, 2011) .......................................................................24

*Johns-Davila v. City of N.Y.*,
No. 99 Civ. 1885 (RMB) (AJP), 2000 U.S. Dist. LEXIS 17012
(S.D.N.Y. Nov. 20, 2000) .......................................................................23

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*,
412 F.3d 418 (2d Cir. 2005) ..............................................1, 5, 13, 26

*Lawson v. CSX Transp., Inc.*,
245 F.3d 916 (7th Cir. 2001) .............................................................20

*Leeds v. Meltz*,
85 F.3d 51 (2d Cir. 1996) .....................................................................6

*Llano v. N.Y.C. Health & Hosps. Corp.*,
No. 13 Civ. 5820 (RJS), 2014 U.S. Dist. LEXIS 47959 (S.D.N.Y.
Mar. 31, 2014)........................................................................................22

*Mabry v. Neighborhood Defender Serv.*,
769 F. Supp. 2d 381 (S.D.N.Y. 2011) .................................................16

*Mazzocchi v. Windsor Owners Corp.*,
204 F. Supp. 3d 583 (S.D.N.Y. 2016) .................................................21

*Miller v. N.Y. State Police*,
No. 20-3976, 2022 U.S. App. LEXIS 10354 (2d Cir. Apr. 18,
2022) .......................................................................................................13

*Munoz-Nagel v. Guess., Inc.*,
No. 12-CV-1312 (ER), 2013 U.S. Dist. LEXIS 61710 (S.D.N.Y.
Apr. 30, 2013)........................................................................................27

*Norman v. NYU Langone Health Sys.*,
492 F. Supp. 3d 154 (S.D.N.Y. 2020), *aff'd* No. 20-364-cv, 2021
App. LEXIS 37365 (2d Cir. Dec. 17, 2021).................................17, 30

*Norville v. Staten Island Hosp.*,
196 F.3d 89 (2d Cir. 1999) ...........................................................31, 32

*Official Comm. of the Unsecured Creditors of Color Tile, Inc. v.*
    *Coopers & Lybrand, LLP*,
    322 F.3d 147 (2d Cir. 2003) ..............................................................6, 7

*Patane v. Clark*,
    508 F.3d 106 (2d Cir. 2007) ...............................................................24

*Rodriguez v. City of N.Y.*,
    197 F.3d 611 (2d Cir. 1999) ...............................................................15

*Rogers v. City of N.Y.*,
    359 F. App'x 201 (2d Cir. 2009) ........................................................23

*Rogers v. Roosevelt Union Free Sch. Dist.*,
    553 F. App'x 88 (2d Cir. 2014) ..........................................................25

*Rojas v. Roman Catholic Diocese of Rochester*,
    660 F.3d 98 (2d Cir. 2011) ..................................................1, 5, 13, 26

*Shields v. Robinson-Van Vuren Assocs.*,
    No. 98-cv-8785 (DLC), 2000 U.S. Dist. LEXIS 6234 (S.D.N.Y.
    May 8, 2000) ........................................................................................19

*Shine v. N.Y.C. Hous. Auth.*,
    No. 19-cv-04347 (RA), 2020 U.S. Dist. LEXIS 171403 (S.D.N.Y.
    Sept. 18, 2020) ....................................................................................23

*Soto v. Disney Severance Pay Plan*,
    26 F.4th 114 (2d Cir. 2022) ...........................................................6, 15

*Sykes v. N. Fork Bank*,
    No. 07-CV-1102 (FB) (WDW), 2009 U.S. Dist. LEXIS 117311
    (E.D.N.Y. Dec. 16, 2009) ...................................................................21

*Telemaque v. Marriott Intl., Inc.*,
    No. 14 Civ. 6336 (ER), 2016 U.S. Dist. LEXIS 12170 (S.D.N.Y.
    Feb. 2, 2016) ...............................................................................*passim*

*Trobia v. Henderson*,
    315 F. Supp. 2d 322 (W.D.N.Y. 2004), *aff'd* 143 F. App'x 374 (2d
    Cir. 2005) ..............................................................................................32

*Watson v. Arts & Entm't Television Network*,
  No. 04 Civ. 1932 (HBP), 2008 U.S. Dist. LEXIS 24059 (S.D.N.Y.
  Mar. 26, 2008) ........................................................................................23

**Statutes**

28 U.S.C. § 1291 ........................................................................................1

28 U.S.C. § 1331 ........................................................................................1

29 U.S.C. § 705(9) ....................................................................................15

42 U.S.C. § 12102(1)(A) ..........................................................................15

29 U.S.C. § 791 ..........................................................................................1

Fed. R. Civ. P. 12(b)(6) ............................................................................7

N.Y. Pub. Auth. L. § 3300 ........................................................................i

## STATEMENT OF JURISDICTION

The United States District Court for the Southern District of New York (the "District Court") had subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff-Appellant Nicholas Earl ("Appellant") alleged that Defendant-Appellee Good Samaritan Hospital of Suffern NY ("Good Samaritan")[2] violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* (the "ADA"), and the Rehabilitation Act, 29 U.S.C. § 791 *et seq.* (the "Rehabilitation Act").

The United States Court of Appeals for the Second Circuit has jurisdiction over Appellant's appeal pursuant to 28 U.S.C. § 1291, as an appeal from a final order dated September 6, 2022 granting the motion to dismiss Appellant's federal claims with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[2] While the caption of the instant appeal also purports to identify Bon Secours Charity Health System and "Westchester Health Care Foundation, Inc." as appellees, Appellant's briefing makes clear that he intends to resurrect claims against *Good Samaritan alone*. (*See* Brief of Plaintiff-Appellant ("Appeal Brief," cited herein as "App. Br."), pp. 1 ("[Appellant] asserts that [Appellee] *Good Samaritan Hospital* denied him a reasonable accommodation and constructively discharged his employment."), 26 ("This [Court] should reinstate [Appellant's] Americans with Disabilities Act and Rehabilitation Act claim *against Good Samaritan Hospital*.") (emphasis added).) In doing so, Appellant concedes Appellees' assertion below that he did not and could not posit plausible claims against any other entity. (*See* Docket Entry No. 45, p. 7; Docket Entry No. 46, pp. 1-2.) Appellant therefore waives any claims against any entity other than Good Samaritan on appeal. *See Hill v. DLJ Mortg. Capital, Inc.*, 689 F. App'x 97, 99 (2d Cir. 2017); *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 100 n. 1 (2d Cir. 2011) (in which this Court did not consider those aspects of the district court ruling for which appellant made "no argument on appeal"); *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005). As a result, the instant briefing addresses the causes of action advanced against Good Samaritan alone.

On September 7, 2022, the Clerk of the District Court entered the Judgment dismissing Appellant's claims.

On September 30, 2022, Appellant filed his Notice of Appeal.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Did the District Court properly dismiss Appellant's claims under the Rehabilitation Act with prejudice, because he did not advance facts to plausibly demonstrate that he suffered from a disability within the meaning of the statute, despite his multiple attempts to replead?

2. Is there sufficient basis in the record for this Court to affirm the District Court's dismissal of Appellant's ADA claim with prejudice, given his failure to allege a cognizable disability in either of his amended pleadings?

3. Is there sufficient basis in the record for this Court to affirm the District Court's dismissal of Appellant's ADA and Rehabilitation Act claims with prejudice, because he repeatedly failed to (A) set forth a causal nexus between his purported disability and adverse action; and (B) plead that any purported accommodation was reasonable?

## STATEMENT OF THE CASE

Appellant's deficient disability-based discrimination claims all stem from Good Samaritan's purported conduct during a nine-day period at the inception of the COVID-19 pandemic, when intensive care units were overrun with critically ill

COVID patients, personal protective equipment ("PPE") was scarce (and rationed by the State), and the need for critical care nurses was acute. Appellant served as a critical care nurse in Good Samaritan's surgical intensive care unit ("ICU"). He caught COVID-19 in late March of 2020, and had recovered by mid-April. Upon his return to work, Appellant—who had purportedly been diagnosed with kidney disease at birth, and whose disease had been stable for a number of years—requested that Good Samaritan provide him with a specialty respirator mask called a powered air purifying respirator ("PAPR"), based on the results of a test to fit him for personal protective equipment ("PPE"). The hospital did not have a functioning PAPR available for Appellant's use at that time, but provided him with a N95 respirator. Concerned about a purported report demonstrating that COVID-19 could affect the kidneys, Appellant allegedly informed his supervisor of his kidney disease, and reported his doctor's purported recommendation that he not work with "immunocompromised" individuals. When an occupational health nurse allegedly inquired as to whether Appellant might be transferred to an unspecified "non-COVID" unit, his supervisor responded that he was a critical care nurse, the implication being that he was needed to provide care in the ICU. After working for two days, Appellant voluntarily resigned from his position with Good Samaritan.

Following his voluntary resignation, Appellant brought suit in the District Court. Therein, he claimed that Good Samaritan had violated the ADA and the

3

Rehabilitation Act by failing to offer him a transfer and/or a PAPR as a disability-based accommodation, resulting in his "constructive termination." (JA 40, at ¶ 80; JA 43, at ¶ 100.) In threadbare fashion, he cited kidney disease and a post-COVID limitation on his ability to taste and smell as his purported disabilities, while also claiming that Good Samaritan refused to transfer him to a non-COVID unit because it erroneously regarded him as disabled as a result of his COVID-19 infection. (JA 28, at ¶ 4; JA 29, at ¶ 5; JA 45, at ¶ 110.) On September 28, 2021, the Hon. Nelson S. Román properly dismissed Appellant's discrimination claims due to abject pleading deficiencies. As is relevant to the instant appeal, the District Court held that Appellant failed to plausibly allege (1) that his purported post-COVID inability to taste and smell, or his purported kidney disease, constituted substantially limiting impairments sufficient to posit a disability-based claim; and (2) that Good Samaritan somehow perceived him to be disabled due to presumed infectiousness following his bout of COVID-19. (JA 59-61.)

Nevertheless, the District Court afforded Appellant a further opportunity to replead his deficient claims. (JA 62.) Accordingly, on November 9, 2021, Appellant filed his Second Amended Complaint (the "SAC"). In that pleading, he unsuccessfully sought to amplify his allegations respecting his purported disabilities, variously claiming that his COVID-19 infection impacted his ability to smell and

taste, sleep, digest, concentrate, and breathe.[3]  The balance of the SAC remained the same, duplicating the deficiencies of the earlier complaint.  (*See*, *generally*, JA 63-96.)

Appellees duly moved to dismiss the SAC on January 3, 2022.  On September 6, 2022, Judge Román rendered his decision respecting that motion (the "Decision"), dismissing Appellant's ADA and Rehabilitation Act claims with prejudice.  As is relevant to the instant appeal, the District Court held that Appellant's pleading failed to plausibly suggest that he suffered from any substantially limiting impairments during his employment with Good Samaritan, as is necessary to posit a disability-based claim.  (JA 112-20.)  The lower court also determined that Appellant failed to plausibly allege that Good Samaritan somehow regarded him as disabled due to his purported infectiousness following his recovery from COVID-19.  (JA 118-19.) Such deficiencies necessarily demanded dismissal of his causes of action under the

---

[3] Appellant had also advanced claims under the New York State Human Rights Law ("NYSHRL") and Section 741 of the New York State Labor Law, as well as common law claims for intentional infliction of emotional distress and fraud or other "intentional tort."  (JA 91-95.)  Upon the dismissal of his federal claims with prejudice, the District Court declined to exercise supplemental jurisdiction over the state law claims. (JA 121.)  As Appellant does not appeal their dismissal here, and has therefore waived any appeal respecting these claims, Appellees do not address them further in the instant briefing. (*See* App. Br., p. 26 (requesting only that this Court "reinstate [Appellant's] Americans with Disabilities Act and Rehabilitation Act claim").)  *See also*, *e.g.*, *Hill*, 689 F. App'x at 99; *JP Morgan Chase Bank*, 412 F.3d at 428; *Rojas*, 660 F.3d at 100 n. 1.  To the extent that the Court is inclined to assess them, Appellant's NYSHRL claims must fail for the same reasons as his ADA and Rehabilitation Act claims.  (*See* Docket Entry No. 45, p. 8, n.8.)  For the remaining state-law causes of action, Appellees respectfully refer the Court to the relevant portions of their briefing below that address the clear deficiencies of such claims.  (Docket Entry No. 45, pp. 22-25; Docket Entry No. 46, pp. 8-10.)

Rehabilitation Act.  While the Court dismissed Appellant's ADA claims on alternative grounds, it noted that these causes of action would also have failed due to the defects they shared with his Rehabilitation Act claims.  (JA 112, n. 5.)  Given that Appellant had already unsuccessfully attempted to amend his pleading on two separate occasions following briefing and a decision on the first motion to dismiss, and also failed to point to how he might plead effectively in a third amended complaint, the District Court properly dismissed Appellant's ADA and Rehabilitation Act claims with prejudice.  (JA 121-23.)

This appeal followed on September 30, 2022.

### **STANDARD OF REVIEW**

This Court reviews the District Court's determinations on Appellees' motion to dismiss *de novo*.  *See Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996); *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP* ("*Official Comm.*"), 322 F.3d 147, 158 (2d Cir. 2003) (denial of leave to amend is subject to *de novo* review).  It may affirm a dismissal "on any ground supported by the record."  *Grieve v. Tamerin*, 269 F.3d 149, 154 (2d Cir. 2001); *see also Soto v. Disney Severance Pay Plan*, 26 F.4th 114, 120 (2d Cir. 2022); *Colautti v. Franklin*, 439 U.S. 379, 397 n. 16 (1979) (noting that on appeal, the prevailing party "may of course assert any ground in support of [the lower court's] judgment, whether or not that ground was relied upon or even considered by the trial court").

Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates dismissal where a plaintiff fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a complaint must set forth "sufficient factual matter" to state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (a plaintiff must do more than advance "naked assertions devoid of further factual enhancement"). A pleading must therefore proffer "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). "[M]ere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action" are insufficient to allow a claim to withstand dismissal. *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555). Further, dismissal of claims with prejudice is warranted where the plaintiff has failed to remedy the defects in his pleading via prior amendment. *See*, *e.g.*, *Official Comm.*, 322 F.3d at 168 (affirming the lower court's denial of leave to amend where the plaintiff already had an opportunity to replead); *Armstrong v. McAlpin*, 699 F.2d 79, 93-94 (2d Cir. 1983) (holding that the "district court did not abuse its discretion in refusing to give [the] plaintiffs a fourth attempt to plead" when, as here, their second amended complaint was insufficient).

## <u>STATEMENT OF ALLEGATIONS</u>[4]

Beginning in October 2018, Good Samaritan employed Appellant as a critical care nurse in its surgical ICU.  (JA 73, at ¶ 27: JA 83, at ¶ 82.)  At birth, Appellant was diagnosed with chronic kidney disease, which had been stable for a number of years.  (JA 67, at ¶ 5.)

In October 2019, while employed with Good Samaritan, Appellant underwent a "fit test" to fit him for a mask to wear as part of his PPE.  During the test, an employee is provided with various masks and then asked to smell a solution to determine whether airborne particles can seep through the mask.  (JA 74, at ¶ 32; JA 75, at ¶ 35.)  Appellant's fit test purportedly indicated that he would need a PAPR. As Good Samaritan did not have a PAPR available for Appellant's use, his face was estimated for a N95 mask instead.  (JA 75, at ¶¶ 35-36.)

Sometime in March 2020, at the start of the COVID-19 pandemic, Appellant informed his supervisor that he had been diagnosed with chronic kidney disease as an infant, and reports had shown that COVID-19 could impact the kidneys.  (JA 79, ¶ 52.)  In mid-March 2020, Plaintiff tested positive for COVID-19, and experienced flu-like symptoms.  (JA 69, at ¶ 10; JA 80, at ¶¶ 59-60; JA 81, at ¶ 64.)  He quarantined and remained out of work for approximately three weeks, returning on

---

[4] Appellant's allegations relevant to the instant appeal are reflected herein.  Such allegations, drawn from the SAC, are accepted as true for the purposes of this briefing alone.  Appellees do not intend for the inclusion of such allegations in this briefing to constitute an admission of any kind.

April 7, 2020. (JA 81, at ¶¶ 64-65.) Upon his return to work, Appellant had "recovered from COVID-19," "no longer had symptoms," and "wasn't coughing or sneezing anymore." (JA 86, at ¶ 96; JA 90, at ¶ 103; Docket Entry No. 43, p. 6.) He submitted to a second fit test at that point, and could taste the solution through the two masks used during the test. (JA 81, at ¶ 66.)

Appellant was ultimately fitted for an N95 respirator that he wore for a period of two days, at which time he allegedly spoke with his supervisor about the issuance of a PAPR. (JA 81, at ¶ 67; JA 82, at ¶¶ 77-78.) His supervisor responded that a PAPR was not available; the hospital lacked the batteries and/or cartridges needed for its use. (JA 71, at ¶ 15; JA 82, at ¶ 78; JA 86, at ¶ 100.) Appellant acknowledged that PPE was scarce at that time, and that even N95 masks were rationed by supervisors, and purportedly reused by staff who needed them. (JA 80, at ¶ 57; JA 85, at ¶ 91.)

Despite being employed as a critical care nurse in the ICU at the height of a global pandemic, Appellant claimed he could no longer work with "immunocompromised" patients as a result of his kidney disease, a claim he had not made prior to March 2020. (JA 69, at ¶ 11; JA 70, at ¶ 13; JA 81, at ¶ 63.) During the conversation with his supervisor regarding the PAPR, he claimed that an occupational health nurse inquired whether he might be placed in a non-COVID unit. His supervisor responded that he was a critical care nurse, implying that he was

needed to provide essential care in the ICU during the height of the pandemic.  (*See* JA 42, at ¶ 96 (in which Appellant wrote, in a contemporaneous email, that he was told he could not be transferred to a non-COVID unit "because [he is] a critical care nurse"); JA 83, at ¶¶ 80, 82.)  Appellant failed to point to any existing vacant position that he may have filled in a "non-COVID" or "clean unit" at that time.[5]

On April 15, 2020, after working a mere two days following his COVID-19 infection, Appellant voluntarily resigned from his employment, citing the lack of a PAPR and what he anticipated would be a refusal to transfer him to a "clean unit." (JA 84, at ¶¶ 85-86; JA 87, at ¶ 102.)  While he claimed that Good Samaritan had constructively discharged him, the Chief Nursing Officer in fact indicated that Good Samaritan would explore rehiring him if he changed his mind about his voluntary resignation, and his supervisor communicated that she was "sorry" to see him go. (JA 84, at ¶ 87; JA 88, at ¶ 119.)

Despite asserting that he had recovered from COVID-19 by the time that he returned to work in April of 2020, Appellant's SAC nevertheless posited purported post-COVID symptoms that he claimed constituted a disability.[6]  Asserting in contradictory fashion that he suffered from an "inability to smell or taste" but his

---

[5] At that time, all non-elective procedures had been cancelled by order of New York State, so the only non-COVID units at Good Samaritan were the Emergency, ICU, and Maternity Departments.

[6] The vast majority of those symptoms were markedly absent from the first two iterations of his pleading.  (*See* JA 28, at ¶ 3 (referencing only a purported impact on his sense of taste and smell).)

"favorite foods and drinks now taste like poison," Appellant claimed his presently reduced sense of smell and taste make him "unable to enjoy food," cause him to avoid consuming certain items, and have led him to ingest "rancid" products. (JA 64, at ¶ 1; JA 69, at ¶ 12.) Such present limitations contrast with his ability to smell and taste at the time of his employment, which was robust enough to allow him to taste a solution through two masks during his fit test. (JA 81, at ¶ 66.) As respects his digestion, Appellant vaguely claimed that sometime "[a]fter catching COVID-19," he began experiencing heartburn that is controlled with medication, has had "difficulty swallowing," and has had an "upset stomach" that sometimes caused him to "regurgitate[] his food." (JA 66, at ¶ 3.) Referencing his experience with "long COVID," Appellant claimed that he now (1) has "brain fog" that makes him "feel like his brain is turning [sic] mush," and (2) has woken up short of breath and suffered nightmares when attempting to sleep, causing purported "difficulty falling asleep and staying asleep." (JA 65, at ¶ 2.) Vaguely alleging that he developed breathing symptoms sometime "after his battle with COVID-19," he claimed that he now "feel[s] restricted" in his breathing and "is not able to exercise [i.e., run] as he once was." (JA 66, at ¶ 4.)

## SUMMARY OF THE ARGUMENT

As the District Court properly held, Appellant's disability-based discrimination claims were elementally deficient, amply warranting their dismissal.

A failure to remedy those deficiencies in two amended pleadings duly resulted in dismissal with prejudice. Nothing in Appellant's briefing warrants a different result.

Abandoning the balance of his causes of action on appeal, Appellant now asks this Court to resurrect his discrimination claims premised on his post-COVID symptoms and his pre-existing kidney disease. The Court should reject such request, because he failed to plausibly allege that he suffered from a cognizable disability or that Good Samaritan denied him a reasonable accommodation. With respect to his post-infection symptoms, the District Court appropriately recognized that Appellant failed to posit facts to suggest that such symptoms constituted a substantial limitation on a major life activity, much less that they substantially limited such activity during the brief window that he was employed with Good Samaritan following his COVID-19 infection. Nor did Appellant set forth any facts whatsoever to demonstrate that Good Samaritan (A) took any action against him *because of his purported post-infection disability*, or (B) denied him accommodations *required because of post-infection symptoms*. The absence of such causal nexus further vitiates any disability-based claim premised on these purported impairments, warranting dismissal.

As respects his kidney disease, the District Court appropriately determined that Appellant also failed to advance facts to suggest that such disease, as he experienced it, constituted a substantially limiting impairment. Further, his pleading did not point to a *reasonable* accommodation that Good Samaritan denied, given the

12

context of the global pandemic and the pressures it admittedly placed upon the country's healthcare system, as well as Appellant's crucial role as a critical care nurse in the ICU.

In light of the foregoing deficiencies, to be explored further herein, this Court should affirm the District Court's dismissal of Appellant's discrimination claims with prejudice.

## ARGUMENT

### A. Appellant Has Abandoned Any Claims of Retaliation Under the ADA and the Rehabilitation Act.

As a threshold matter, while Appellant sought to advance unsupported and amorphous claims of retaliation in his underlying pleadings, (JA 92, at ¶¶ 113-14), he fails to reference such claims at all in the Appeal Brief. As such, he has waived any appeal respecting claims of purported retaliation under the ADA and Rehabilitation Act. *See*, *e.g.*, *Miller v. N.Y. State Police*, No. 20-3976, 2022 U.S. App. LEXIS 10354, at *3, n. 1 (2d Cir. Apr. 18, 2022) ("[The appellant] does not discuss in his brief[,] and has therefore waived[,] his claims for . . . retaliation [].");  *Hill*, 689 F. App'x at 99; *JP Morgan Chase Bank*, 412 F.3d at 428; *Rojas*, 660 F.3d at 100 n. 1. This Court should summarily affirm the dismissal of any claims sounding in retaliation as a result, in the event Appellant belatedly seeks to resurrect them on reply.

**B. Appellees Have Not Waived Any Defense Respecting Plaintiff's Administrative Exhaustion of His ADA Claims.**

Although not material to the instant appeal for the reasons articulated in Footnote 7, *infra*, to the extent that Appellant now argues that Appellees have "waived" any arguments they may have had regarding the administrative exhaustion of his ADA claim, (*see* App. Br., pp. 10-12), no such waiver has occurred. Appellant failed to append any right to sue letter or administrative charge to his pleading, and Appellees have never seen a copy of any charge Appellant may allege exists. Appellees therefore affirmatively made clear in their motion to dismiss that they were "unable to assess if all claims brought [in the SAC] were first properly addressed through [Appellant's] administrative remedies." (Docket Entry No. 45, p. 5, n. 5.) As the District Court explicitly noted, Appellant did not produce the right to sue letter even after Appellees indicated in their briefing below that they had not seen it. (JA 110.) Appellees' inability to address administrative exhaustion due to Appellant's threadbare pleading and failure to produce relevant documents simply does not constitute a waiver of any argument respecting failure to exhaust.

**C. The Dismissal of Appellant's Discrimination Claims Must Be Affirmed.**

Appellant's ADA and Rehabilitation Act causes of action are subject to the same evaluative standards, and dismissal of such claims must be affirmed on the same basis. (*See* Docket Entry No. 45, p. 8, n. 8; JA 112, n. 5 (in which the lower court asserts that Appellant's ADA claims would fail for the same reasons it

dismisses his Rehabilitation Act claims).) *See also*, *e.g.*, *Rodriguez v. City of N.Y.*, 197 F.3d 611, 618 (2d Cir. 1999). The failures of Appellant's ADA and Rehabilitation Act claims are therefore discussed collectively herein.[7]

### i. **The District Court Properly Dismissed the Causes of Action Premised on Appellant's Purported Post-COVID Symptoms, Because He Failed to Plead that He Even Experienced Such Symptoms During His Employment.**

It is axiomatic that, in order to plausibly advance a disability-based discrimination claim under the ADA and Rehabilitation Act, a plaintiff must allege—among other things—that he suffered from a cognizable disability that substantially limited a major life activity during the period of employment about which he complains. *See* 42 U.S.C. § 12102(1)(A); 29 U.S.C. § 705(9); *Hedges v. Town of Madison*, 456 F. App'x 22, 24 (2d Cir. 2012) (affirming dismissal of the plaintiff's ADA claim and rejecting his assertion that "the district court should have inferred he was disabled because he alleged that he has suffered a variety of medical conditions"); *Baptista v. Hartford Bd. of Educ.*, 427 F. App'x 39, 42 (2d Cir. 2011) (affirming dismissal of the discrimination claim where the plaintiff did not "describe how either [of his] impairment[s] limited any major life activity—a requirement for

---

[7] Appellant asserts on appeal that his ADA claim must be reinstated because the lower court erroneously dismissed it based upon his failure to plead administrative exhaustion. (App. Br., pp. 9-12.) However, this Court may affirm the dismissal "on any ground supported by the record," and is not constrained by the District Court's rationale below. *Grieve*, 269 F.3d at 154; *see also Soto*, 26 F.4th at 120; *Colautti*, 439 U.S. at 397 n. 16. As the pleading deficiencies outlined herein are the same for both his ADA and Rehabilitation Act claims, dismissal of both claims with prejudice was amply warranted below.

a condition to constitute a disability for purposes of the laws on which he relies"); *Mabry v. Neighborhood Defender Serv.*, 769 F. Supp. 2d 381, 401 (S.D.N.Y. 2011) (dismissing the plaintiff's ADA claim as he alleged "no facts tending to show that his medical condition limits, let alone substantially limits, his life activity"); *Telemaque v. Marriott Intl., Inc.*, No. 14 Civ. 6336 (ER), 2016 U.S. Dist. LEXIS 12170, at *28 (S.D.N.Y. Feb. 2, 2016) (a plaintiff must plead that he suffered from a requisite impairment "during the period of alleged discrimination by [the] [d]efendants").

In dismissing Appellant's discrimination claims, the District Court correctly held—consistent with Appellees' briefing below—that he failed to posit facts to plausibly demonstrate that he was disabled due to his post-COVID symptoms at the time that he was employed by Good Samaritan.  (JA 115-16; *see also* Docket Entry No. 45, p. 9; Docket Entry No. 46, pp. 3-5.)  Per his own allegations, a mere nine days had elapsed between the date that Appellant reported to work following his COVID infection and the date that he submitted his letter of voluntary resignation; he is only alleged to have worked two of those nine days.  (JA 81, at ¶¶ 65-67; JA 84, at ¶ 85; JA 87, at ¶ 102.)  He variously asserted that, during this period, he had "recovered from COVID-19," "no longer had symptoms," and "wasn't coughing or sneezing anymore."  (JA 86, at ¶ 96; JA 90, at ¶ 103; Docket Entry No. 43, p. 6.)  He also claimed that he was able to taste a solution used to fit test him for a protective

mask upon his return, demonstrating that his sense of taste while he was employed with Good Samaritan was not as limited as it purportedly is now. (*Compare* JA 81, at ¶ 66 (in which Appellant asserted that he "tasted the solution" during his fit test at Good Samaritan) and Docket Entry No. 43, p. 6 (noting that Appellant "still had his smell at the time"), *with* JA 69, at ¶ 12 (in which he claimed a present "*inability to smell or taste*" (emphasis added)).) Appellant otherwise referenced his experience with "long COVID," vaguely alleging that he developed other symptoms sometime "since COVID" or "after his battle with COVID" without specifying that these symptoms existed in the roughly one-month period between infection and his resignation. (JA 65-66; *see also* Docket Entry No. 43, p. 6 (in which Appellant affirmatively alleged that "[h]is condition has worsened with time").) As Appellant persistently failed to plausibly allege that he suffered from substantially limiting COVID-related symptoms during his employment—despite two opportunities to amend his pleading—dismissal with prejudice was amply warranted on this independent basis. (JA 115-16; JA 121-23.) *See Telemaque*, 2016 U.S. Dist. LEXIS 12170, at *28; *Dean v. Westchester Cnty. P.R.C.*, 309 F. Supp. 2d 587, 595 (S.D.N.Y. 2004) (highlighting that the plaintiff failed to indicate that he "actually suffered from [the purportedly disabling condition] at the time when he was working" for the defendant); *Norman v. NYU Langone Health Sys.*, 492 F. Supp. 3d

154, 163 (S.D.N.Y. 2020), *aff'd* No. 20-364-cv, 2021 App. LEXIS 37365 (2d Cir. Dec. 17, 2021).

On appeal, Appellant simply asserts that, because he alleged that he had experienced purportedly limiting symptoms sometime since contracting COVID-19 in March of 2020, the District Court should have liberally inferred that those symptoms in fact existed in the brief window he was employed by Good Samaritan following infection. (App. Br., pp. 17-19.) This Court, like the District Court below, should reject such unsupported assertion, not least because the allegations outlined above expressly contradict it.[8] (*Compare* JA 69, at ¶ 12 (referencing an "inability to taste") *with* JA 81, at ¶ 66 (indicating that Appellant "tasted the solution" at his fit test while employed); *see also* JA 86, at ¶ 96; JA 90, at ¶ 103; Docket Entry No. 43, p. 6.)

### ii. **Appellant Failed to Allege that Any of His Post-COVID Symptoms Substantially Impaired a Major Life Activity, Meriting Dismissal by the District Court.**

Temporal problems aside, the District Court also properly determined that Appellant had failed to plausibly allege that his purported post-COVID symptoms

---

[8] In an apparent last-ditch effort to save his claim premised on symptoms purportedly resulting from his COVID-19 infection, Appellant now also claims that, in alleging that he was "unwilling to get reinfected" with COVID-19 and had requested PPE during his employment, such allegations somehow imply that he was already suffering from substantially limiting COVID-related symptoms in the two days he worked following his COVID-19 infection. (App. Br., p. 23.) No such conclusion can be plausibly drawn from such allegations; a desire to avoid COVID infection simply does not signal that a prior infection had resulted in a cognizable disability.

18

constituted a disability at all, because his allegations did not suggest that such symptoms substantially limited any major life activity.  (JA 116-18; *see also* Docket Entry No. 45, pp. 9-12, 13-14.)

While Appellant advanced a purported limitation on his ability to taste—and did so in contradictory fashion, at turns alleging that he is unable to taste food but that it also somehow "taste[s] like poison," (JA 69, at ¶ 12; JA 64, at ¶ 1(d))—the lower court correctly determined that he had failed to posit facts demonstrating that such symptoms substantially limited his "ability to eat and digest food."  (JA 116.) *See Telemaque*, 2016 U.S. Dist. LEXIS 12170, at *27 (limitations that do not impair the "ability to eat and digest food[] simply do not rise to [the] substantial level" necessary to state a claim).  An effect on Appellant's purported ability to "enjoy foods and drinks," (App. Br., pp. 19-20), is not a substantial limitation of a major life activity.  *Telemaque*, 2016 U.S. Dist. LEXIS 12170, at *27 (the plaintiff's "avoidance of alcohol . . . does not interfere with his ability to eat or digest" but "evinces only a commonsense diet"); *Batac v. Pavarini Constr. Co.*, No. 03-cv-9783 (PAC), 2005 U.S. Dist. LEXIS 25765, at *20-21 (S.D.N.Y. Oct. 27, 2005) ("dietary modifications" that "merely restricted [the plaintiff's] ability to eat certain foods" are not substantial limitations on the "ability to eat" and "cannot be the basis for [a] lawsuit"); *Shields v. Robinson-Van Vuren Assocs.*, No. 98-cv-8785 (DLC), 2000

19

U.S. Dist. LEXIS 6234, at *11, 13 (S.D.N.Y. May 8, 2000) (the necessary modification of the plaintiff's "diet and eating habits" is not a substantial limitation).

Appellant's own authority on appeal is illustrative in this regard. (*See* App. Br., p. 20.) Therein, the Seventh Circuit determined that the appellant's ability to eat was substantially impacted by his disabling diabetes, as he (A) "always [had to] concern himself with the availability of food, the timing of when he eats, and the type and quantity of food he eats," and (B) was required to "adhere strictly to [a] demanding [treatment] regimen" involving food to stave off "potentially life-threatening" symptoms. *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 918, 924 (7th Cir. 2001). Appellant's pleading does not allege anywhere near this sort of limitation on his ability to eat. His characterization of his purported consumption of "rancid" food on an unspecified number of occasions as a "difficulty ingesting food," (App. Br., p. 20), is simply nonsensical. Nor has Appellant plead any facts to demonstrate that he "cannot properly nourish himself," as he now baselessly claims on appeal. (*Id*.) This Court must disregard such threadbare assertions; the allegations actually reflected in his pleading demonstrate that Appellant cannot found a disability-based discrimination claim upon his purportedly reduced sense of smell and taste, because it does not constitute a substantial limitation.

His other post-COVID symptoms fare no better; such failure is especially damning, given the multiple opportunities Appellant had to replead, with Appellees'

briefing and the District Court's decision serving as a roadmap. Respecting Appellant's claims about his ability to sleep, the lower court correctly determined that generic allegations that he cannot "get a peaceful night's rest," periodically experiences nightmares, and has an unspecified "difficulty falling asleep and staying asleep" did not suffice to state a disability, as such unvarnished assertions do not plausibly evince a *substantial limitation* on his ability to sleep. (*See* Docket Entry No. 45, p. 11; JA 117.) *See also Colwell v. Suffolk Cnty. Police Dep't*, 158 F.3d 635, 644 (2d Cir. 1998) (an assertion that the plaintiff "usually get[s] a tough night's sleep" is insufficient to show a disability, because "[d]ifficulty sleeping is extremely widespread" and the plaintiff failed to show that "his affliction is any worse than is suffered by a large portion of the nation's adult population"); *Sykes v. N. Fork Bank*, No. 07-CV-1102 (FB) (WDW), 2009 U.S. Dist. LEXIS 117311, at *5-6 (E.D.N.Y. Dec. 16, 2009) (the plaintiff's assertion "that he wakes up after a few hours every night" is insufficient to state a substantial limitation); *Mazzocchi v. Windsor Owners Corp.*, 204 F. Supp. 3d 583, 612 (S.D.N.Y. 2016) (an allegation of "violent nightmares" is insufficient). Nor do Appellant's vague references to "brain fog" or "memory loss" that makes him "feel like his brain is turning [sic] mush" suffice, as they do not "detail the frequency, duration, or severity" of his purported impairment. (*See* JA 65, at ¶ 2(a).) *See, e.g., Cain v. Mandl Coll. of Allied Health*, No. 14 Civ.

1729 (ER), 2017 U.S. Dist. LEXIS 96917, at *8 (S.D.N.Y. June 22, 2017).[9]  As concerns his purported digestive issues, Appellant's assertions that he takes medication for heartburn, cannot "tolerate carbonated liquids," has an unspecified "difficulty swallowing," and at times experiences an "upset stomach" that causes him to "run to the bathroom" or "regurgitate" his food, (JA 66, at ¶ 3), at are equally insufficient to state a substantial limitation on the ability to eat and digest.  *See*, *e.g.*, *Telemaque*, 2016 U.S. Dist. LEXIS 12170, at *27; *Llano v. N.Y.C. Health & Hosps. Corp.*, No. 13 Civ. 5820 (RJS), 2014 U.S. Dist. LEXIS 47959, at *5 (S.D.N.Y. Mar. 31, 2014) (dismissing a discrimination complaint where the plaintiff "nowhere plausibly allege[d] that her nausea . . . substantially limited one or more major life activities" or was "more than minor"); *Batac*, 2005 U.S. Dist. LEXIS 25765, at *20-21.  (*See also* JA 117.)  Appellant's allegations regarding his purported difficulty breathing are similarly deficient.  An assertion that he suffers from "significant" shortness of breath or chest tightness is merely a threadbare, insufficient regurgitation of the key element of a disability-based cause of action.  (JA 66, at ¶ 4.)  *See*, *e.g.*, *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555).  The

---

[9] While Appellant purports to draw a link on appeal between his allegedly impaired sleep and his ability to concentrate, such connection is notably absent in the pleading itself; nowhere does Appellant allege therein that his difficulty sleeping somehow led to poor concentration.  (*Compare* App. Br., pp. 21-22 (claiming that "sleep deprivation" caused him to "wake up . . . unable to concentrate or retain memory") *with* JA 65, at ¶ 2(a) (attributing his "brain fog" and memory loss to "long COVID" alone, separate and apart from his difficulties with sleep).)  This Court must reject Appellant's attempts to mischaracterize and amplify his pleading via his brief on appeal.

allegation that his lungs "feel restricted" also does not set forth a substantial limitation on his breathing. (JA 66, at ¶ 4.) *See*, *e.g.*, *Shine v. N.Y.C. Hous. Auth.*, No. 19-cv-04347 (RA), 2020 U.S. Dist. LEXIS 171403, at *17-19 (S.D.N.Y. Sept. 18, 2020) ("vague or conclusory allegations regarding 'difficulty' or 'trouble' conducting a major life activity" is insufficient). Nor does a purported limitation on his ability to run, (JA 66, at ¶ 4(a)), suffice to support a disability-based claim. *See Rogers v. City of N.Y.*, 359 F. App'x 201, 203 (2d Cir. 2009) (experiencing "shortness of breath" when undertaking physical activity "is not a substantial limitation of a major life activity so as to render [the appellant] disabled under the ADA"); *Butterfield v. N.Y. State*, No. 96 Civ. 5144 (BDP) (LMS), 1998 U.S. Dist. LEXIS 18676, at *32 (S.D.N.Y. July 15, 1998) ("limitations on plaintiff's ability to run" are irrelevant); *Watson v. Arts & Entm't Television Network*, No. 04 Civ. 1932 (HBP), 2008 U.S. Dist. LEXIS 24059, at *32-33 (S.D.N.Y. Mar. 26, 2008) ("Courts in this district have repeatedly held that the need to walk slowly . . . do[es] not constitute [a] substantial limit[ation]") (collecting cases); *Johns-Davila v. City of N.Y.*, No. 99 Civ. 1885 (RMB) (AJP), 2000 U.S. Dist. LEXIS 17012, at *25 (S.D.N.Y. Nov. 20, 2000) (as a matter of law, exercise is not a major life activity). Given that Appellant failed to plausibly allege a substantial limitation on a major life activity in connection with his purported post-COVID symptoms, the District Court

properly disposed of the disability discrimination claims premised upon them. (*See* JA 116-18.)

### iii. **Dismissal of Appellant's Claims Premised on His COVID Infection are also Independently Warranted Because He Failed to Tether Such Purported Post-COVID Symptoms to Any Required Reasonable Accommodation or Adverse Action.**

In his exhaustive treatment of his purported post-COVID symptoms, Appellant either fails to appreciate or attempts to disguise an equally egregious failure of his pleading, from which dismissal also appropriately flowed. Whether he is or was disabled based on alleged symptoms resulting from his COVID-19 infection is but one prong of the inquiry; to sufficiently state a claim, Appellant must posit sufficient facts to *tether any purported disability to the allegedly discriminatory treatment he received*. (Docket Entry No. 45, p. 20.) *See also*, *e.g.*, *Giambattista v. Am. Airlines, Inc.*, 584 F. App'x 23, 25 (2d Cir. 2014) (affirming dismissal of the plaintiff's ADA claim where "the complaint did not plausibly allege that [the defendant] discriminated against [her] because of a perceived [] impairment" (*citing Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)); *Idlisan v. N.Y.C. Health & Hosps. Corp.*, No. 12 Civ. 9163 (PAE), 2013 U.S. Dist. LEXIS 163151, at *15-16 (S.D.N.Y. Nov. 15, 2013) (dismissing the disability discrimination claim where the plaintiff did not "plead a plausible nexus between his disability and [the adverse action]"); *Jiggetts v. Local 32BJ, SEIU*, No. 10 Civ. 9082 (DAB) (JCF), 2011 U.S. Dist. LEXIS 103100, at *8 (S.D.N.Y. Aug. 10, 2011)

(same); *Bailey v. Mount Vernon City Sch. Dist.*, No. 17-CV-9973 (KMK), 2020 U.S. Dist. LEXIS 57602, at *29 (S.D.N.Y. Mar. 30, 2020) ("An element of an ADA 'reasonable accommodation' claim is that such a reasonable accommodation is 'needed,' *i.e.*, that 'a causal relationship existed between the disability and the request for accommodation.'"); *Rogers v. Roosevelt Union Free Sch. Dist.*, 553 F. App'x 88, 89 (2d Cir. 2014) (affirming dismissal because there was "no nexus between [the plaintiff's accommodation] request and her disability"). Appellant did not, because he could not, allege that his post-COVID symptoms relating to his sense of smell and taste, digestion, breathing, or ability to sleep and concentrate somehow required the issuance of a PAPR or a transfer to a "clean unit." Nor did he posit facts to suggest that Good Samaritan's response to such symptoms somehow resulted in a constructive discharge. There is no allegation that Good Samaritan was even aware of these symptoms, much less put on notice of a need to accommodate them or motivated to target Appellant in any way because of them.[10]

Instead, Appellant halfheartedly asserted in the SAC that Good Samaritan refused to employ him in a "clean unit" simply because he had been infected with COVID-19, based upon a discriminatory fear that he would transmit the disease to other patients. In a procedural sense, Appellant exclusively maintains in the Appeal

---

[10] In fact, Appellant affirmatively claimed in the SAC that Good Samaritan's actions toward him following his COVID infection were "motivated by hubris, optics, and greed," as opposed to discriminatory animus. (JA 71, at ¶ 17.)

25

Brief that he in fact suffered from a cognizable disability as a result of his COVID-19 infection, and that his discrimination claims should have survived on that basis. (App. Br., pp. 17-23.)  He has therefore waived any discrimination claim premised on the theory that Good Samaritan somehow regarded him as disabled due to his infection and refused to employ him in a "clean unit" as a result.  (*See* JA 84, at ¶ 89; JA 86, at ¶ 96; JA 91, at ¶ 107.)  *See Hill*, 689 F. App'x at 99; *Rojas*, 660 F.3d at 100 n. 1; *JP Morgan Chase Bank*, 412 F.3d at 428.  Setting aside that procedural bar, Appellant also failed to plead any facts whatsoever to suggest that he was denied a transfer due to his perceived infectiousness, and the District Court correctly rejected this baseless assertion.    (JA 118-19.)    Appellant's own pleading affirmatively stated that Good Samaritan sought to retain him in the ICU because he was a "critical care nurse" and was needed to care for the critically ill patients housed there.  (JA 83, at ¶ 82.)  As Appellees noted in their briefing below—and as the lower court acknowledged—Appellant was admittedly permitted to access the ICU after his period of quarantine, where immunocompromised patients abound.   This affirmatively demonstrates that Good Samaritan harbored no concern whatsoever about having Appellant care for vulnerable individuals following his COVID-19 infection.  (JA 118-19; Docket Entry No. 45, p. 13.)

Appellant's elemental failure to link the purported disabilities resulting from his COVID-19 infection to any action by Good Samaritan necessarily required

dismissal below, and that dismissal should be affirmed here.[11]  *See*, *e.g.*, *Giambattista*, 584 F. App'x at 25; *Idlisan*, 2013 U.S. Dist. LEXIS 163151, at *15-16; *Munoz-Nagel v. Guess., Inc.*, No. 12-CV-1312 (ER), 2013 U.S. Dist. LEXIS 61710, at *21 (S.D.N.Y. Apr. 30, 2013) (dismissing an ADA claim where the plaintiff "failed to include any factual allegations from which it can be inferred [that the defendant took adverse action] *because of* her disability" (emphasis in original)). That is the case regardless of whether these impairments are sufficient to state a disability under the applicable statutes.

### iv. <u>Appellant Also Failed to Allege that He Was Disabled in Connection with his Purported Kidney Disease During His Employment with Good Samaritan, Amply Warranting Dismissal of His Related Discrimination Claims.</u>

As with his purported post-COVID symptoms, Appellant also failed to plausibly allege that his kidney disease constituted a disability at the time that he was employed by Good Samaritan, leading the District Court to properly dismiss his related discrimination claims.  (JA 119-20; Docket Entry No. 45, p. 14.)

Appellant's briefing on appeal does not warrant disturbing that result.  He primarily asserts that kidney disease impacts the major life activity of waste elimination, citing a number of decisions outside this jurisdiction in support.  (App.

---

[11] While the District Court did not reach such issue in the Decision, it forms an independent basis for this Court to affirm the dismissal of Appellant's claims.  (*See* Docket Entry No. 45, pp. 20-21.)  *See also*, *e.g.*, *Grieve*, 269 F.3d at 154 (allowing this Court to affirm a dismissal "on any grounds supported by the record"); *Colautti*, 439 U.S. at 397 n. 16.

Br., pp. 24-25.)  But whether the disease itself constitutes an impairment is not the sole inquiry.  Rather, it must be *substantially limiting in the individual case* to qualify as disabling under the applicable statutes.  *See*, *e.g.*, *Graham v. Macy's Inc.*, No. 14 Civ. 3192 (PAE), 2015 U.S. LEXIS 35588, at * 6 (S.D.N.Y. Mar. 23, 2015) (holding that while a particular "disorder can, in some circumstances, qualify as a disability under the ADA," a complaint that "[did] not explain how that [disorder] substantially limits one or more of [the plaintiff's] major life activities" did "not provide sufficient factual allegations to establish that [her] disorder was disabling"); *Giles v. NBC Universal, Inc.*, No. 10 Civ. 7461 (DAB), 2011 U.S. Dist. LEXIS 106171, at *14 (S.D.N.Y. Sept. 20, 2011) ("[M]erely having an impairment does not make one disabled for the purposes of the ADA.").  In fact, Appellant's own cited authority notes that "there is little reason to think that *every* instance of kidney disease will constitute a substantial limitation" and thereby qualify as a disability.  *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 256 (4th Cir. 2006) (emphasis added) (cited at App. Br., p. 25).

As Appellees argued below, and the District Court properly held, Appellant failed to point to any substantial limitations resulting from his purported kidney disease in either of his amended pleadings, much less limitations that actually occurred while he was employed with Good Samaritan for the brief period following his COVID infection.  (JA 120; Docket Entry No. 45, pp. 13-14.)  On appeal,

Appellant is merely forced to reiterate his sole factual allegations that (A) he was born with chronic kidney disease, which had been "stable" prior to and during his employment with Good Samaritan; and (B) "two urine samples" taken at an unidentified time after his COVID infection contained protein, the presence of which is purportedly a "factor" used to "analyz[e] the risk of further deterioration" of his kidneys.[12]  (JA 67, at ¶ 5.)[13]  Tellingly, he can cite no authority for the proposition that these two test results—unaccompanied by any alleged physical effects or further need for treatment—amount to a substantial limitation.  In fact, the cases to which Appellant does point on appeal demonstrate a far greater degree of impairment than alleged here.  For example, in *Heiko*, the plaintiff was deemed to be disabled due to his "end-stage" kidney disease, as he was undergoing "dialysis . . . three afternoons per week, for a total of twelve hours" and "felt nauseous and depleted [thereafter], unable even to stand in the shower." *Heiko*, 434 F.3d at 257; *see also Gilbert v. Frank*, 949 F.2d 637, 638, 641 (2d Cir. 1991) (cited at App. Br., pp. 24-25) (noting

---

[12] On appeal, Appellant modifies this allegation, claiming that these urine samples in fact "signal[ed] further deterioration of his kidneys." (App Br., p. 25.)  The Court must not credit this attempt to amplify his deficient pleading in the Appeal Brief; a potential "risk" of deterioration, as set forth in the SAC, does not constitute a presently limiting impairment.

[13] While he also highlights a threadbare allegation that his kidney disease "substantially limits his ability to eat certain foods and . . . filter nutrients from the bloodstream and eliminate waste," (JA 90, at ¶ 104), such formulaic assertions alone, lacking facts to plausibly demonstrate an actual substantial limitation, do not state a cognizable claim.  *See, e.g., Dancause v. Mount Morris Cent. Sch. Dist.*, 590 F. App'x 27, 28-29 (2d Cir. 2014) (affirming dismissal where a plaintiff only "recit[ed] activities found in the [ADA statute] that she could not adequately perform," and "did not allege any facts from which a court could plausibly infer that her [medical condition] substantially limited" those activities); *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555).

that the plaintiff's "system had deteriorated to the point where he was approaching terminal kidney failure [and had begun] dialysis," and holding that "persons whose kidneys would *cease to function without mechanical assistance*, or whose kidneys *do not function* sufficiently to rid their bodies of waste matter *without regular dialysis*, [are] substantially limited" (emphasis added)); *Fiscus v. Wal-Mart Stores, Inc.*, 385 F.3d 378, 385 (3d Cir. 2004) (finding that the plaintiff had sufficiently alleged a substantial limitation by pleading that she "suffered from end-stage renal disease").

Appellant also fails to point to any factual basis from which a court could plausibly infer that even the minor kidney-related symptoms purportedly resulting from his COVID-19 infection existed at the time of his employment, amply warranting dismissal. *See Telemaque*, 2016 U.S. Dist. LEXIS 12170, at *28; *Dean*, 309 F. Supp. 2d at 595; *Norman*, 492 F. Supp. at 163. (JA 120.) On appeal, he halfheartedly claims to meet this temporal requirement by noting that he "told his supervisor about his kidney disease" during his employment, and cited reports about the potential impact COVID-19 could have on kidney function during their conversation. (App. Br., p. 25.) But this interaction with a supervisor does not reflect any *actual substantial limitations* he personally suffered from his kidney disease while actively working for Good Samaritan, and so is wholly irrelevant.

30

### v. **Appellant Failed to Plausibly Set Forth a Reasonable Accommodation in Connection with his Kidney Disease that Good Samaritan Denied, Meriting Dismissal.**

Assuming, *arguendo*, that Appellant had sufficiently posited facts to suggest that his kidney disease substantially impaired a major life activity at the time he was employed with Good Samaritan—which he did not—he still failed to plausibly allege that Good Samaritan denied him a reasonable accommodation in connection with same, further warranting dismissal below. It is axiomatic that, to state a claim for failure to accommodate, a plaintiff must plausibly allege that a reasonable accommodation existed that would allow him to perform the essential functions of the job at issue. *See Norville v. Staten Island Hosp.*, 196 F.3d 89, 98-99 (2d Cir. 1999). As noted in Appellees' briefing below, to the extent Appellant bases his failure to accommodate claim on the purported failure to provide him with a PAPR, this request was simply not reasonable. (*See*, *generally*, Docket No. 45, pp. 16-17.) His own allegations made clear that Good Samaritan was not in possession of a functioning PAPR, during a period that PPE in general was admittedly scarce and even N95 masks were being rationed due to unprecedented demand prompted by the burgeoning pandemic. (JA 71, at ¶ 15; JA 80, at ¶ 57; JA 82, at ¶ 78; JA 85, at ¶ 91; JA 86, at ¶ 100.) Appellant further alleged that the individual conducting his first fit test in fact estimated him for a N95 mask, and Good Samaritan issued him an available N95 *respirator* following his COVID-19 infection. (JA 75, at ¶ 36; JA 81,

31

¶ 67.)[14] In addition, prevailing guidance at the time suggested that an individual who had been infected with COVID-19 was unlikely to be infected again, further undercutting the need for Appellant to be issued a specialized PAPR in a period of scarcity. (Docket Entry No. 45, pp. 16-17.) Given the foregoing, Appellant failed to plausibly allege that a PAPR would be a reasonable accommodation for his purported kidney disease, meriting dismissal of such claim.

Appellant also claimed that Good Samaritan failed to accommodate him by failing to transfer him to a "clean" or "non-COVID" unit, but again, any such transfer was patently unreasonable given his own allegations. (*See*, *generally*, Docket No. 45, pp. 17-18.) As a threshold matter, a transfer is not *per se* a reasonable accommodation; no employee has the right to insist on a particular position, and a transfer is only reasonable if an appropriate vacancy exists. *Norville*, 196 F.3d at 99; *Trobia v. Henderson*, 315 F. Supp. 2d 322, 333 (W.D.N.Y. 2004), *aff'd* 143 F. App'x 374 (2d Cir. 2005); *Jackan v. N.Y. State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000); *Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 767 F. App'x 123, 126 (2d Cir. 2019) (affirming dismissal of a reasonable

---

[14] Appellant's allegations concerning the N95 respirator are predictably, and tellingly, vague. While he alleged that "both *masks* available" at his post-infection fit test "did not work" because he "tasted" the solution during that test, (JA 81, at ¶¶ 66-67)—an allegation contradicted by another indicating that his purported "inability" to smell and taste, (JA 69, at ¶ 12)—Appellant conspicuously did not assert that Good Samaritan actually issued him either of those purportedly deficient masks to use during his shift. Rather, he alleged that it provided him with a N95 *respirator*, given the unavailability of the alternative respirator about which he now complains (*i.e.*, the PAPR). (JA 71, at ¶ 15; JA 81, at ¶ 67; JA 82, at ¶ 78; JA 86, at ¶ 100.)

accommodation claim premised on a transfer, due to a plaintiff's failure to plausibly allege that a suitable vacancy existed). A reasonable accommodation also "does not mean elimination of any of the job's essential functions." *Gilbert*, 949 F.2d at 644.

In the SAC, Appellant premised his request for a transfer to a "clean" or "non-COVID" on his doctor's purported recommendation that he "should not contact immunocompromised people." (JA 81, ¶ 63.) But this purported transfer would not necessarily insulate him from such patients, who are potentially present in all areas of a hospital. Nor does he plead a plausible connection between his kidney disease and his inability to interact with the "immunocompromised." Despite purportedly suffering from kidney disease since birth, nowhere did he allege that he experienced this patient restriction prior to March 2020, and so presumably tended to immunocompromised patients as a critical care nurse in the ICU during the preceding two years without issue. *See*, *e.g.*, *Bailey*, 2020 U.S. Dist. LEXIS 57602, at *29 (asserting there must be a causal connection between the disability and the accommodation requested). Further, Appellant does not plausibly allege that a vacant position actually existed in a "clean" or "non-COVID" unit; in simply pointing to a nurse's general inquiry as to whether he might be transferred to an unspecified "clean unit," and vaguely asserting that a unit for "non-COVID patients" had been opened, (JA 83, at ¶¶ 80-81), Appellant does not plausibly point to a particular vacancy that he might have filled, vitiating his transfer-based claim. *See*,

*e.g.*, *Harvin*, 767 F. App'x at 126.  Finally, Appellant's own allegations reflect that his ability to serve in a critical care capacity in the ICU was an essential function of his position, especially in the height of a global pandemic that placed extreme burdens on the nation's intensive care functions.  In response to the nurse's alleged inquiry about a potential transfer, Appellant's supervisor responded that he was a critical care nurse, indicating that it was essential for him to perform critical care functions in the ICU at that time.   (JA 42, at ¶ 96 (in which Appellant contemporaneously indicated that he was purportedly told he could not be transferred to a "non-COVID" unit "because [he is] a critical care nurse"); JA 83, at ¶¶ 80, 82.)  *See*, *e.g.*, *Gilbert*, 949 F.2d at 644.  In light of the foregoing, Appellant's failure to accommodate claim premised on this transfer was subject to dismissal on this independent basis.

## **CONCLUSION**

For the foregoing reasons, Appellees respectfully request that the Court affirm the District Court's dismissal of Appellant's claims in their entirety, with prejudice.

Dated:  New York, New York
           April 14, 2022

/s/*Brian J. Clark*
Brian J. Clark
bjclark@venable.com
VENABLE LLP
151 West 42nd Street, 49th Floor
New York, New York 10036
(212) 307-5500
*Attorneys for Defendants-Appellees*

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the type-volume limitation set forth within Federal Rule of Appellate Procedure 32(a)(7)(B) and the word limit of Local Rule 32.1(a)(4)(A) because the principal brief contains 9,066 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface in 14 point Times New Roman font.

Dated: New York, New York
      April 14, 2023

           /s/*Brian J. Clark*
           Brian J. Clark
           bjclark@venable.com
           VENABLE LLP
           151 West 42nd Street, 49th Floor
           New York, New York 10036
           (212) 307-5500
           *Attorneys for Defendants-Appellees*